| 91 | 359 |
|-----|-----|
| 155 | 608 |

## Lewis's Appeal.

The parties to several suits in equity agreed in writing to refer to three masters the controversies involved in said suits, and all collateral questions the decision of which might be necessary to the determination of said suits and the reports of said masters were to be "without exception or appeal," and such agreement was by consent made an order of court in the suits. *Held,* that one of the parties to said agreement could not revoke his submission, especially where the debtors in the awards were to have the privilege of paying in instalments upon time. *Held, further,* that under such circumstances an appeal will be quashed and the Supreme Court will not consider the reasons assigned.

October 17th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Appeal from the Court of Common Pleas, No. 1, of *Allegheny county*: Of October and November Term 1879, No. 3. In equity.

Bill in equity filed by Samuel Lewis against Lockhart & Frew, David Hostetter, Byers & Co. and W. H. D. Barr, administrator of Arnold Hertz, for an account, the plaintiff claiming that defendants were partners with him in the Pittsburgh Petroleum Oil Company.

The material facts will be found in the opinion of this court.

*George P. Hamilton* and *D. S. Wilson,* for appellant.—A submission to arbitration is revocable at any time before it is executed, although in terms irrevocable: Watson on Arbitration, 59 Law Library 36. A revocation by one of several parties to a submission, by his express act or by his death or otherwise, is a revocation in toto: Id. 40.

The exceptions to these are two, that is to say, where the submission provides that it shall be made a rule of court or it may be inferred that such was the intention of the parties; or where it is in the nature of a contract on a sufficient consideration.

There is no express provision in the submission that it shall be made a rule of court, and no manifest implied intention to that effect.

The intention will be implied where the submission recites the

[Lewis's Appeal.]

Act of Assembly under which it is made or the question at issue in a pending cause and nothing beyond it is referred: McAdam's Ex'r *v.* Stillwell, 1 Harris 90; Stokely *v.* Robinson, 10 Casey 315; and that is as far as the courts have gone.

The agreement of reference must be confined to the matters in variance in the suit: Summy *v.* Hiestand, 15 P. F. Smith 300. The agreement in this case is not confined to matters in variance in the equity suits.

The Act of 1836 does not authorize the submission of a case pending in equity. Section 6, which relates to pending suits, is confined to actions at common law: Cotton & Smith *v.* Babcock, 14 P. F. Smith 462. A common-law judgment on the equity side of the court is incongruous and irregular: Id.

*D. T. Watson, John H. Hampton* and *George Shiras, Jr.,* for appellees.—The cases on the subject of the effect to be given to agreements, waiving right of exceptions and appeal, are found cited in McCahan *v.* Reamey, 9 Casey 535; Graham *v.* Graham, 9 Barr 254.

How can it be claimed that a defendant in an equity case, can, by a mere notice, revoke powers delegated to a master, as well by the order of the court as by the agreement of the parties?

Chief Justice SHARSWOOD delivered the opinion of the court, January 5th 1880.

This is an appeal from a decree in equity in the court below, and a motion is now made on behalf of the appellee to quash the appeal on the ground that the appellant is precluded by his agreement from taking it. That a party may so be precluded is settled beyond all controversy. McCahan *v.* Reamey, 9 Casey 535, and the cases there cited in the opinion of the court. We are only then to determine whether it appears by the record that the appellant did make such an agreement which is binding on him.

There were three equity cases pending, besides several suits at law in consequence of differences which had arisen as to the settlement of the partnership affairs of the firm known by the name of The Pittsburgh Petroleum Oil Company. A master had been appointed in each of the equity cases, and they were in the course of the discharge of their duties, when all the parties came together through the intervention of a friend, and by an informal agreement consented that all their differences should be referred to the final decision of the three masters, it being agreed that a more formal instrument should be drawn up by them. This was accordingly done, and the agreement dated March 30th 1875, was prepared and signed by all the parties, this appellant included. After reciting the facts of the suits and differences, and that the parties were desirous of compromising and finally settling all differences

between them, either as firms or individuals in the premises, it was witnessed that they had agreed and by that agreement did agree "to refer unto J. H. Miller, F. M. Magee and J. F. Slagle, as arbitrators and referees, for their joint arbitrament and decision all controversies of whatsoever kind or nature which have arisen or which may arise, by reason of the premises, as well as all collateral controversies;" "and the said parties hereby further agree to submit to the award of said arbitrators, or a majority of them, without exception or appeal, hereby respectively binding themselves, their heirs, executors and administrators, each to the other, for the faithful observance of the terms of this agreement." "The award, in the three equity proceedings, hereinbefore mentioned, when filed of record, to operate and be as effective as a final decree in each of said cases respectively. Judgment to be entered thereon without exception or appeal." There were several other provisions not material to the question now before us, except a stipulation that "the debtors in the award, made under the provisions of this agreement, to have the privilege of paying into court or to the parties, the amounts found against them, in three equal payments, at sixty days, ninety days and four months from the date of the award, with interest." This agreement was presented to the court in each of the equity cases, and on April 9th 1875, the orders referring the cases to masters were modified so as to appoint Messrs. Miller, Magee and Slagel masters in each of the cases to examine and report "under and in pursuance of the agreement herewith filed." This was in effect making the agreement a part of the order referring the cases to the masters which, so far as regards matters not arising under the bills and answers, the court could not have done, without the consent of the counsel of all the parties in open court, which it appears by the record was given. There can be no reason to question that under this order the masters were invested with all the jurisdiction given to them by the agreement, and that without exception or appeal.

The masters proceeded to hear the testimony and examine the accounts, all which were very voluminous, and the examination very protracted. After hearing at great length the counsel of all the parties, they were about to file their report, having determined to give notice of their intention to do so on the 25th July 1877, and to invite exceptions thereto, and actually did give such notice on the 12th July 1877. On the day before, July 11th 1877, the appellant notified the masters that he annulled and revoked the reference, for reasons not necessary to be here adverted to, and he contends now that he had a right so to revoke.

Had this been a common-law reference it is plain that he could not have revoked it. A naked submission may be revoked at any time before the award is delivered, but not so when it is made under an agreement founded on sufficient consideration. It is very

[Lewis's Appeal.]

evident that the agreement of reference here was founded on sufficient consideration. The stipulation above recited for the postponement of payment of the awards to the parties respectively to whom money should be found due, was a consideration between the parties, for the making the agreement, an advantage to those found to be debtors, which, independent of such a stipulation, they did not possess. Paist *v.* Caldwell, 25 P. F. Smith 161.

But this was not a reference at common law, or under any Act of Assembly: Cotton *v.* Babcock, 14 P. F. Smith 462. As we have seen, it was approved and adopted by the court, and with the consent of the counsel of all the parties, made a part of its order referring the pending cases in equity to the referees as masters in chancery. It cannot be pretended with any show of reason or authority that the appellant could revoke his consent to this order of the court, and he must accordingly be held bound by it to submit to whatever decree the court might make upon the report of the masters, without exception or appeal.

In the petition presented by the appellant in the court below, he urged several grounds for setting aside the reports of the masters, which were duly considered by the court, and the rule which he had obtained for that purpose was discharged. It is not necessary to consider these reasons, because by his agreement the appellant has precluded himself from any appeal to this court. Indeed, the only real question is, whether the court below had power, with the consent of all the parties, to make the order of April 9th 1875, referring the cases to the three masters " under and in pursuance of the agreement." Of their power to do so there cannot be any reasonable doubt." If there ever was a case in which the maxim *interest reipublicœ ut sit finis litium* was applicable, it surely is this case.                                              Appeal quashed.