## Wm. A. Paulsen and Flora A. Brown
### v.
### Charles Manske et al.

*Mechanic's Lien—Contracts—Whether with Owners—Agency—Evidence—Admissions—Release—Waiver—Arbitration—Revocation.*

1. Upon a petition for a mechanic's lien, it is *held:* That the contracts under which the petitioners furnished labor and materials were made with the owners of the land by one who, though acting in his own name, was authorized to act and was in fact acting, not only for himself but as their agent; that certain admissions by the beneficial owner, contained in an agreement submitting the matters in dispute to arbitration, are competent evidence tending to establish the agency, and as such sufficient to sustain the decree for the petitioners; that a release given by the petitioners to a mortgagee is not available to the owners as a waiver of the liens in question; and that said liens were not affected by the agreement to submit to arbitration, the commencement of this suit having been a revocation of the agreement to arbitrate.

2. Either party to a submission, may, at any time before an award, revoke the authority of the arbitrators. The institution of a suit before award by one of the parties, the cause of action being the same subject-matter, revokes by implication the agreement to arbitrate.

[Opinion filed November 23, 1887.]

Appeal from the Circuit Court of Cook County; the Hon. Cyrus Epler, Judge, presiding.

This was a petition filed by Charles Manske against William A. Paulsen, Lewis A. Brown, Flora A. Brown, August Zander, Otto Schmidt and Henry Sierks, for a mechanics' lien. The petition alleges that on the 23d day of October, 1884, the defendant Lewis A. Brown was the owner of the legal title, in trust for defendant, Flora A. Brown, of a certain lot on the northwest corner of Stone and Scott Streets, Chicago, having a frontage of 130 feet on Scott Street and forty-three and sixty-one one-hundredths feet on Stone Street; that on that day Lewis A. Brown and Flora A. Brown entered

into a written contract with Paulsen, thereby appointing him their attorney in fact, to contract for the erection of certain buildings on said lot, and to charge, obligate and bind them to pay for the same; that either in and by said power of attorney or some other contract between him and them, Paulsen was vested with some equitable interest in said premises, the precise nature of which was unknown to the petitioner; that October 23, 1884, the Browns and Paulsen entered into a contract with the petitioner by which the petitioner contracted to furnish the materials and do the cut-stone work in said buildings for $9,900, payable from time to time as the work progressed; that said contract, though signed by Paulsen only, was in fact executed by him not only in his own behalf but in behalf of the Browns, and was binding in equity on them as well as on him; that the petitioner performed his contract according to its terms, and completed the same May 25, 1885, and that after deducting all payments, there remained due him the sum of $3,000.75, with interest from May 25, 1885; that the other defendants had or claimed some interest in the premises, but that such claims were subsequent and junior to the petitioner's lien.

Defendants Zander, Schmidt and Sierks, each filed an answer and cross-petition, admitting the allegations of the original petition as to the ownership of the premises, the contract between the Browns and Paulsen and Paulsen's equitable interest, and each setting up a contract with the Browns and Paulsen to furnish certain materials and do certain portions of the work in the construction of said buildings, and alleging the performance of such contracts; that certain sums remained due thereon, and praying for a lien on the premises therefor.

The Browns and Paulsen answered, admitting that Lewis A. Brown was seized in fee of said premises for the use of Flora A. Brown, and admitting that there was a contract between the Browns and Paulsen concerning the anticipated erection of said buildings, but denying that Paulsen was the agent of the Browns, alleging that Paulsen, when contracting with the petitioner and with the defendants, Zander, Schmidt and Sierks, did not act as the agent of the Browns, and that they were not

liable on such contracts; that all of said parties had entered into an agreement for an arbitration of the matters in dispute between them, and that said arbitration proceedings had not reached a conclusion, their failure so to do being in no way attributable to the Browns and Paulsen, and that such submission to arbitration was a waiver on the part of the petitioners of their liens on said premises. The answer also alleged that the petitioners in the original and cross-petitions had executed and delivered to one of the defendants answering, an explicit waiver in writing of any liens which they might have upon said premises for any work or materials put upon the same.

At the hearing, which was had on pleadings and proofs, the petitioners gave in evidence two contracts executed by Lewis A. Brown and Flora A. Brown of the first part, and William A. Paulsen of the second part, under their respective hands and seals, and both bearing date October 1, 1884. By one of said contracts the party of the first part covenanted and agreed to convey to the party of the second part, in fee, clear of all incumbrances, by a good and sufficient warranty deed, the west ninety-five feet of said lot, being all of the lot except the east thirty-five feet, "upon which a double house is to be erected, according to an agreement of even date herewith, and which is hereby made a part of this contract," and the party of the second part agreed to pay the party of the first part for the portion of the lot so to be conveyed, the sum of $5,846, by building said double house upon said thirty-five feet of said lot.

By the other contract it was agreed, in consideration of the contract above described, that the party of the second part should build a row or block of houses on said lot, according to certain plans and specifications, making the house on the east thirty-five feet a double house, and said contract then proceeded as follows:

"It is further agreed hereby, that said first parties shall execute any notes, trust deeds, mortgages or any documents that may be necessary for the purpose of borrowing money on said lot with which to erect said block of buildings, agreeing that all moneys so borrowed shall be used by said first parties for

paying for said buildings, to be paid, however, only on orders or architect's certificates, endorsed by said second party, meaning hereby, that said first party shall control all the money expended on said buildings, but that said second party shall have entire control of the work, and, by his orders, of the payment of contractors.

"It is further agreed, that when said block is finished according to said plans, said first parties shall estimate the cost of the east house of said block, according to the vouchers and certificates of cost for the same, and credit said second party with the amount so ascertained, and if said amount be more than the purchase money named in the contract for a deed above mentioned, said first parties will execute the deed therein named, and assume so much of the mortgage debt on said lot and the buildings thereon, as the cost of said east house exceeds the amount of said purchase money; but if the cost of said east house as above be less than said purchase money, then the second party shall pay the difference in cash, or secure said first parties for any amount that may appear due, and when all of said purchase money shall have been paid, then the deed shall be executed according to the contract for a deed hereinbefore mentioned.

"It is hereby understood to be the meaning and intention of the parties hereto, that the second party is to have and to enjoy any profits that may arise or grow out of the performance of this contract or the contract for a warranty deed hereinbefore mentioned, and to control the property in every way until all the provisions of both contracts are performed; and that the second party will furnish the vouchers and architect's certificates to the first parties for the payment of moneys and upon which to estimate the cost of said east house.   In case of dispute as to said cost, each party hereto shall choose an appraiser, and the two chosen shall name a third, and the three shall finally decide said cost; and said first parties are to have the said east house at its cost as aforesaid, and they shall execute a deed for the land as soon as said land is fully paid for, either by the money said first parties find has been expended in the building on the part of the lot reserved by them, or paid for in any other manner by said second party."

Manske, Zander and Schmidt produced in evidence contracts in writing for the labor and materials which they respectively claim to have furnished for said buildings. Upon their face these contracts purport to be between them and Paulsen individually, and they are signed by Paulsen alone. Sierks proved a verbal contract with Paulsen under which he, as architect, drew the plans and specifications, and superintended the erection of said buildings. Each of said parties gave evidence tending to show the performance by each of his contract, and also showing the balance due them respectively.

To obtain money to erect said buildings, the Browns obtained a loan of $22,000 from the United States Mortgage Company, and executed to said company a mortgage on said premises for that amount. Of the money thus borrowed, $15,000 was paid over by the agent of the mortgage company to the Browns during the progress of the work. It appearing that the petitioners and others were claiming mechanics' liens on said premises, the agent of the mortgage company refused to pay over the remaining $7,000 unless matters should be so arranged as to give said company priority over said liens. At the same time various disputes having arisen between Flora A. Brown, to whom the legal title to said lot had in the meantime been conveyed by Lewis A. Brown and Paulsen, of the one part, and said mechanics and material men of the other, an agreement was entered into between them, under their respective hands and seals, bearing date August 17, 1885, submitting said differences to arbitration. Said agreement was executed by Mrs. Brown, Paulsen, the petitioners and others, and recited that: "Whereas, the said William A. Paulsen, on his behalf, and on behalf of Flora A. Brown, did, several months ago, in the erection of certain buildings on (the premises in question), enter into written contracts" with Manske, Zander, Schmidt and various others (setting out the substance of said contracts), and it was claimed by all of said contractors that they had fully performed their contracts, and that there was due them various sums particularly specified; and, "Whereas, said Paulsen, on his own behalf and on behalf of said Flora A. Brown, entered into a verbal contract with Charles Thielemann, for the furnish-

ing of the galvanized iron cornice work in and about the erection of said buildings," etc.; and, " Whereas, said Paulsen, on his own behalf and on behalf of said Flora A. Brown, as aforesaid, at the commencement, employed said Henry Sierks as architect, to superintend the erection of said buildings, and to exercise all necessary control for the purpose of securing a strict performance on the part of said several contractors of the terms of said contracts," etc.; and, " Whereas, it is claimed by said Paulsen, on behalf of the said party of the first part, that said contractors, or some of them, have not furnished material, and have not performed their work as they were required to do by the terms of said contracts," etc.; and, " Whereas, all of said parties to this agreement are desirous of avoiding litigation, and determining their disputes in as speedy a manner as possible, so as to secure the prompt payment on the part of said party of the first part, of all claims due the contractors, as well as a proper admeasurement and adjustment of all damages to said Paulsen, if any shall appear to exist. Now, therefore, in view of the premises, the parties to this agreement have decided to submit to an arbitration of all differences existing between them."

The agreement then recited that Mrs. Brown and Paulsen, the parties of the first part, had appointed one Newman, and the contractors and architect, one Dryer, as arbitrators, who were to select a third arbitrator to act with them. Then, after directing the mode of procedure by the arbitrators and the form of their award, and providing that such award might be entered in the Circuit Court of Cook County as a final judgment and determination of that court, it contained the following stipulation: "It is hereby stipulated and agreed by said contractors and the architect, that, so far as their claims for mechanics' liens against said premises are concerned, the United States Mortgage Company, a corporation, has a lien prior and superior to theirs by virtue of said mortgage, made, acknowledged and delivered to said corporation by Lewis A. and Flora A. Brown, the owners of the land on which said buildings are erected, under date of December 31, 1884, and conveying said premises for the purposes of securing an indebtedness of $22,000."

The stipulation in regard to the lien of the mortgage company, contained in the foregoing agreement, not proving satisfactory to the agent of said company, the architect and mechanics, after considerable negotiation among the parties, executed and delivered to said agent the following instrument:

" We, the undersigned, contractors for the buildings erected by Flora A. Brown and William A. Paulsen, on the premises described as lot 1, block 6, in Stone's subdivision of Astor's addition to Chicago, hereby waive and relinquish all and every right to a mechanic's lien under the statute, for work done and materials furnished on said premises, and particularly our priority of claim so far as the United States Mortgage Company is concerned.

" Chicago, August 26, 1885."

This waiver was signed by Zander, Schmidt, Sierks, Manske and various other mechanics and material men.    Upon the delivery of said waiver to the agent of the mortgage company, said agent paid over to Mrs. Brown the remaining $7,000 of the loan.

It appears that the arbitrators appointed by the parties were unable to agree upon a third arbitrator.    A stipulation was thereupon entered into authorizing the appointment of such third arbitrator by the Circuit Court, but before that was done, Dryer, the arbitrator selected by the mechanics, became sick and went to Europe.    An attempt was then made to obtain Paulsen's consent to the substitution by the mechanics of another arbitrator in his place, and such consent being refused, this suit was brought.

The court, by its decree, found the petitioners entitled to liens on said premises for the several amounts remaining due them on their respective contracts, and ordered Mrs. Brown and Paulsen to pay the same within five days, or in default of such payment, that said premises be sold.

Messrs. EDWARD J. JUDD and A. M. PENCE, for appellants.

The contracts in this case were made with ' one not the owner of the land, and so no lien can exist in favor of the contractors.    Woodburn v. Gifford, 66 Ill. 285; Wetherill v. Ohlendorf, 61 Ill. 283.    The owners of the land in this case,

the Browns, contracted with Paulsen to erect certain build-
ings, and he in turn entered into personal contracts with the
lien claimants in this cause. Their position is that of sub-
contractors, and they are entitled to no lien, as they have
given no notices to the owners as required by statute. The
taking of other security is a waiver of the lien. Benneson v.
Thayer, 23 Ill. 374; Kinzey v. Thomas, 28 Ill. 502. The lien
claimants in this cause contracted with Paulsen individually,
and subsequently entered into articles of arbitration in which
Flora A. Brown joined, making herself liable for any award
which might be rendered. This constitutes a waiver of the
lien, if any existed.

Messrs. VOCKE & STORCK, for appellees.

As a general rule an equitable as well as a legal owner
of property may create a mechanics' lien. Phillips on Me-
chanics' Liens, Sec. 66.

The word "owner" includes owner in equity as well as at
law. Atkins v. Little, 17 Minn. 353; Rollins v. Cross, 45 N.
Y. 768.

Parties having contracted for the purchase of property, and
entered into possession, will, so far as their equitable interests
are concerned, be regarded as owners. Phillips on Mechanics'
Liens, Sec. 69; Stockwell v. Carpenter, 27 Iowa, 119.

The interest of the owner may be a fee simple, an estate for
life, or it may be any estate less than a fee. Tracy v. Rogers,
69 Ill. 662.

The fact that a person acted as an agent may be shown,
although he signed the contract in his own name. Whitlock
v. Hicks, 75 Ill. 460.

The liability of the principal to third persons upon contracts
made by his agent, within the scope of his authority, is not
varied by the mere fact that the agent contracts in his own
name, whether he discloses his agency or not, provided the
circumstances of the case do not show that an exclusive credit
is given to the agent. Story on Agency (7th Ed.), Sec. 446.

The release given to the contractors is inoperative as to
appellants. The release was executed on the faith of the prom-

ise to enter into arbitration, and unless that agreement has been performed appellants should not be permitted to claim any benefits under the release.

The release is unquestionably operative as to the mortgage company, but it has no force or operation at all in favor of appellants. Upon what consideration is it founded as to them? Their revocable and unenforceable agreement to submit the matters in controversy to arbitration is certainly not a good or valuable consideration, unless the agreement was carried out. Afterward made, we make no question but what the lien would be gone, but the mere execution of an agreement to do something in the future, and which can not be enforced, ought not to operate to deprive contractors of their lien for work done under the statute.

BAILEY, J. It is urged that the decree in this case, establishing mechanics' liens upon the premises in question, should be reversed on the ground that the contracts under which the petitioners furnished labor and materials were not made with the owners of the land. At the time said contracts were entered into, the legal title to the lot on which the buildings in question were to be erected stood in Lewis A. Brown, said title being held by him in trust for Flora A. Brown. They, being the owners of the premises, entered into a contract with Paulsen, which provided for the erection on said lot of a block of buildings. In erecting said buildings the Browns were to provide the necessary money by mortgaging the lot, and were to keep said money in their own hands, and to pay it out for labor and materials on architects' certificates indorsed by Paulsen. Paulsen was to take possession of the lot, make the contracts, see that the labor and materials were provided, have the oversight of the work, and, in general, attend to all business matters incident to the erection of the buildings. When the buildings were completed, the Browns were to deed to Paulsen the west ninety-five feet of the lot for $5,846, and the same with the buildings thereon were to belong to him, subject to the mortgage given to raise the money necessary to defray the cost of the buildings, said purchase money to be paid by erecting and turning over to the

Browns a building on the east thirty-five feet of the lot, costing that sum, the Browns to assume only so much of said mortgage as the cost of the building on the east thirty-five feet should exceed said sum of $5,846.

Under this arrangement Paulsen let the contracts for the erection of the buildings in his own name; and the decree can not be sustained only on the theory that he was acting, and was authorized to act, not only for himself, but also on behalf of and as the agent of the Browns. The scheme upon which the buildings were erected was somewhat peculiar, and it is not easy to define the exact legal relations established between the Browns and Paulsen by their contract. But we are unable to see anything in those relations which necessarily excludes the theory that, in entering into the various contracts for labor and materials, though acting in his own name, he was authorized to act, and was in fact acting, not only for himself, but as the agent of the Browns, or, at least, as the agent of Mrs. Brown, the beneficial owner of the lot.

In the agreement executed by Mrs. Brown, Paulsen and the petitioners, submitting the matters in dispute between them to arbitration, admissions are made by Mrs. Brown in a very full and ample manner, that in making all of said contracts, Paulsen acted on her behalf as well as for himself. These admissions are competent evidence tending to establish Paulsen's agency, and are, in our opinion, so far as this point is concerned, sufficient to sustain the decree.

Again, it is urged that the petitioners have waived their liens, and that the decree for that reason can not be sustained. The instrument relied upon as a waiver or release names no releasee and expresses no consideration, and we have therefore to look to extrinsic evidence to ascertain both the consideration and the party in whose favor the waiver or release was intended to be executed. The reason for giving the release was that the agent of the mortgage company declined to pay over $7,000 of the money loaned on said mortgage unless the liens claimed by the mechanics and material men should be so arranged as to leave the mortgage the first lien on the premises. The consideration of the instrument was the consent of the mortgage company to pay over said money so as to make

it available for the satisfaction, *pro tanto*, of the claims of the mechanics and material men. Not only did the consideration emanate from the mortgage company, but the instrument, on being executed, was delivered to said company. The legal conclusion from these circumstances is that the mortgage company and that company alone was the party in whose favor the release was intended to be executed. That seems to us to be as clearly shown as though the name of the mortgage company had been inserted in the instrument as releasee.

The release, being given to the mortgage company, is available for that company alone. It was not executed to Mrs. Brown or to Paulsen, or upon any consideration moving from them. So far as appears they are mere strangers to the instrument, and we know of no principle upon which they can be permitted to avail themselves of its benefits.

We are of the opinion that the petitioners' liens were in no way affected by the agreement to submit the differences between the parties to arbitration. Had the submission been followed by an award, the rights of the parties would undoubtedly have been conclusively determined. It is a general rule, however, that any person who is a party to a submission may, at any time before an award made, revoke the authority of the arbitrators; and for this purpose it makes no difference whether the submission is by deed or by parol. Morse on Arbitration, 230, and authorities cited. Such revocation may be express or it may be implied; and the institution of a suit by one party against another, after the submission has been entered into and before the award has been made, the cause of action being the subject-matter of the arbitration, will operate to revoke, by implication, the agreement to arbitrate. Peter's Administrator v. Craig, 6 Dana, 307; Morse on Arbitration, 236.

The institution by the petitioners of the present suit was, in law, a revocation of the agreement to arbitrate, and after such revocation, the rights of the parties were no longer subject to or affected by the agreement.

We are of the opinion that none of the errors assigned by the appellants should be sustained, and the decree will therefore be affirmed.

*Decree affirmed.*