J. S. WYNNE AND WIFE AND MRS. R. T. GRAY v. GREENLEAF-JOHNSON LUMBER COMPANY.

(Filed 17 March, 1920.)

**Arbitration—Consideration Implied—Fair Dealings—Breach of Agreement—Notice—Revocation—Actions—Liquidated Damages.**

> The parties to an agreement to arbitrate impliedly agree not to attempt to unduly affect the award, and the breach of which by the one party justifies a revocation by the other. Where a party to such an agreement designedly gets a material witness for the opposing party so drunk that he may not be able to testify on the hearing before the arbitrators, the party for whom this witness was to testify may give prompt notice of his revocation of the agreement and bring his action to assert his original rights. *Semble,* the injured party, had he so chosen could have sustained his action to recover the amount of liquidated damages specified in the agreement to arbitrate.

APPEAL by defendant from *Guion, J.,* at November Term, 1919, of FRANKLIN.

This was an action for damages for cutting timber under contract size, and negligent burning of lands of plaintiffs, submitted to R. B. White, referee. No exceptions were taken to his findings of fact or conclusions of law with the single exception of his findings and conclusions as to the breach of the agreement to arbitrate by plaintiffs, and consequent damage to the defendant. The judgment of the referee was confirmed, and the defendant appealed.

*Jones & Bailey and Ben T. Holden for plaintiffs.*
*Wm. H. and Thos. W. Ruffin and W. H. Yarborough for defendant.*

CLARK, C. J. The only question presented is as to the right of the plaintiffs to revoke the contract of arbitration.

The referee found as facts upon the testimony, which being approved by the judge are conclusive, on appeal that: "On 3 October, 1916, the parties entered into written agreement to arbitrate, arbitrators were selected, and a hearing set at Vaughn. Witnesses from Wood came to Vaughn on defendant's train. As the train was leaving Wood, defendant's superintendent, Hayes, caused inquiry to be made for whiskey, giving as his reason that he wished to get one Denton a witness for plaintiffs and a passenger on the train, drunk so that he could not testify. Upon learning that another passenger had a pint of whiskey in his bag back at the station, he had the train stopped and backed half a mile to the station. The whiskey was procured. Most of it was given to Denton, who became drunk. Denton was a material witness for the plaintiffs."

The plaintiffs not long after gave notice of their revocation of the arbitration, and brought this action.

The defendant breached the contract of arbitration by this action of its superintendent, and we agree with the counsel for the plaintiffs that they might well have insisted upon the recovery of $500 liquidated damages on account thereof. They chose rather to proceed to assert their original rights in this action. Mr. R. B. White, the referee, we think stated the law tersely and correctly as follows, in his report, which the judge approved: "An agreement to submit a controversy to arbitration by necessary implication carries with it the condition that neither party will attempt by any unfair or fraudulent means to affect the award which is to be made. The condition is concurrent and vital. A breach of such condition by one party to the agreement justifies a revocation by the other. Intentionally getting a material witness drunk for the purpose of keeping him from testifying in behalf of the other party is such a breach, and your referee is of the opinion that the defendant should recover nothing on his counterclaim."

21—179

In 2 Ruling Case Law, p. 93, it is said: "It has been held that where a party takes a fraudulent advantage of the other party, the award will be set aside. *Chambers v. Crook,* 42 Ala., 171; *Emerson v. Udall,* 13 Vt., 477."

In 5 Corpus Juris, 61, it is said in summing up the authorities cited: "If the party revoking the submission has sufficient cause to do so, he, of course, incurs no liability for damages."

The conduct of the defendant's superintendent, for which the defendant company is responsible, was so clearly reprehensible and contrary to good faith and public policy that the action of the referee.and of the court needs no citation of authorities in approval.

It may be proper to add, in the language of *Lord Erskine,* when at the bar, "Morality may come in the cold abstract from the pulpit, but men smart practically under its lessons when we lawyers are the teachers."

Affirmed.