In the Matter of an Arbitration of and Concerning Certain Matters
in Difference between CLARENCE T. BULLARD and Others,
Copartners, Doing Business under the Firm Name and Style of
C. T. BULLARD Co., Respondents, and MORGAN H. GRACE Co.,
INC., Appellant.

First Department, October 31, 1924.

Arbitration — c. i. f. contract for sale of butter to be shipped from Argen-
tine provided that government inspector's certificate would be final
as to quality — contract provided for arbitration of disputes — defend-
ant refused to arbitrate question of quality — during arbitration,
defendant and one arbitrator withdrew — other arbitrators made award
which was confirmed by court — order of confirmation erroneous
because of non-completion of arbitration proceedings and withdrawal
of one arbitrator before final submission — plaintiff's remedy after
withdrawal of defendant and arbitrator was to move under Arbitration
Law, § 3, to compel arbitration — quality of butter on arrival cannot
be arbitrated under contract.

An award made in arbitration proceedings of disputes arising under a c. i. f. con-
tract for the sale of butter to be shipped from the Argentine, which contract
provided that the certificate of the government inspector as to quality should
be final, is invalid and should not have been confirmed by the court, since it
appears that the defendant refused to arbitrate the question of quality; that
the chairman of the arbitrators ruled that the inspector's certificate was not
final and that the quality of the butter must be considered by the arbitrators;
that thereafter and before the termination of the arbitration proceedings the
defendant and one of the arbitrators withdrew and refused to go on; and that
the other two arbitrators made findings and an award.

The award is invalid because the arbitration was never completed and for the
further reason that before final submission of the matter one of the arbitrators
withdrew from the hearing and did not participate in the discussion or
award.

The plaintiff's remedy, under the circumstances, was to move under section 3
of the Arbitration Law to compel arbitration under the terms of the contract.

*It seems*, that under the contract of sale the title to the butter passed to the
plaintiff as soon as it was delivered to the carrier with freight paid thereon to
the point of destination, and the bill of lading and other documents forwarded
to the buyer, and that in view of the stipulation in the contract that the
certificate of the government inspector as to quality would be final, any dispute
as to the quality of the butter could not be arbitrated.

APPEAL by the defendant, Morgan H. Grace Co., Inc., from an
order of the Supreme Court, made at the New York Special Term
and entered in the office of the clerk of the county of New York
on the 26th day of February, 1924, confirming in all respects the
findings and award of arbitrators and denying defendant's motion
to vacate the award, and also from a judgment entered in said
clerk's office on the 3d day of March, 1924, pursuant to said order.

*Winthrop & Stimson* [*Albert W. Putnam* of counsel; *Arthur E. Pettit* with him on the brief], for the appellant.

*Samuel Weinberger*, for the respondents.

McAvoy, J.:

The controversy here relates to a contract for the sale of butter under c. i. f. contracts. The shipments under the contracts were to be made during November, 1923, from the Argentine and the contracts were each for the sale of 500 cases of Argentine Best Creamery Butter — Salted which contained a provision that the Argentine government inspection certificate certifying that the shipment is of first grade and free from preservatives, together with inspector's certificate certifying free from mold, and weight certificate to be attached to documents were to be final. Each contract also contained a provision that any disputes under the contract were to be settled by arbitration before the New York Mercantile Exchange. The c. i. f. contracts read: " Price 32c per lb. c. i. f. New York."

Under this contract, nothing appearing to the contrary, the seller completed his contract when he delivered the merchandise called for to the shipper, paid the freight thereon to the point of destination, and forwarded to the buyer the bill of lading, the invoice, the insurance policy and receipt showing payment of freight. All risks, under such a contract, while the goods are in transit, rest on the buyer. The seller by putting the cargo on board and forwarding to the buyer a bill of lading and a policy of insurance, of the kind in current customary use in the trade, fulfills all of his obligations. Carrying out these obligations constitutes a delivery by the seller under the contract, and title passes to the buyer, even though it is stated in the contract that delivery was to be made at the destination point. Title having passed to the buyer, the Bullard Company, it assumed the risks of transit. After the butter left the Argentine on board ship, the Grace Company was not under any obligation with respect to its loss, deterioration or spoiling. Grade, quality and weight were all to be certified by final certificates to be furnished by the seller. When the shipping documents and these certificates were presented with a letter of credit, payment was due and payment was made in accordance with these terms and the buyer received the butter. The seller had no part in the handling of the butter after it arrived in New York. There is no claim that the shipping documents, the certificates of quality, grade and weight were not in accordance with the contract. The Bullard Company, however, subsequently made a claim on the Grace Company that the butter did not come

up to the quality called for by the contract, and demanded an arbitration under the clause of the contract which provided for settling of disputes under this contract by arbitration before the New York Mercantile Exchange.

The appellant, the Grace Company, claims that the question of quality of the butter on its arrival in New York could not be arbitrated, because there was no dispute arising under the contract, since the contract provided that certificates should be final on the subject of quality.

The respondent, the Bullard Company, asserted that it was entitled to an allowance by reason of the defective quality of the butter, and that such claim constituted a dispute which could be settled by arbitration under the terms of the contract.

A submission was thereupon made, which read in the language of the parties that the matter submitted to arbitration was " Whether or not 500 cases of Argentine Best Creamery Butter, contract November 13th, 1923, and 500 cases Argentine Best Creamery Butter, contract November 27th, 1923, are a good delivery per terms of said contracts."

The parties then proceeded to the holding of the arbitration before arbitrators selected. On the hearing of the arbitration the respondent's representative claimed the right to arbitrate the quality of the butter. The appellant's representative stated that the certificates were final and that the quality of the butter was not the subject of the arbitration. The arbitrators' chairman ruled that the Argentine inspection was not final and that the quality of the butter must be taken into consideration by the arbitrators.

Before any testimony was taken a representative of the Grace Company, the appellant, and one of the arbitrators withdrew and refused to carry out the arbitration proceedings and took no further part therein. Two arbitrators thereafter signed findings and an award, dated January 11, 1924, making an allowance to the Bullard Company on each contract for the loss occasioned by the alleged inferior quality of the butter on arrival. The Special Term has confirmed the award and denied a motion to revoke it, and judgment has been entered thereon.

We think the Special Term did not correctly determine the controversy: *First,* because the arbitration was never completed; and *secondly,* before final submission of the matter was had one of the arbitrators withdrew from the arbitration hearing and did not participate in its award or discussion.

While there was a provision of the contract to arbitrate any disputes arising from the contract, the question as to whether the dispute which the arbitrators proposed to decide was one which

might be decided by them could not be determined if one of the arbitrators and one of the parties refused to consent to a final submission.

The Arbitration Law does not make the contract of arbitration self-executing. It provides a machinery whereby the court may apply sanctions to carry out the terms of the agreement. An arbitration now, since the enactment of the Arbitration Law, can no more than formerly proceed *ex parte* without the direction of the court.

We think that the two arbitrators who proceeded with the conduct of the arbitration and signed the award had no power to proceed after a withdrawal of the other arbitrator without an application under the statute to compel the appellant to specifically perform the contract to arbitrate. The parties to a contract of arbitration may still revoke, waive, abandon or break their contract to arbitrate, and when so broken it may be enforced only according to law. Section 3 of the Arbitration Law reads: "A party aggrieved by the failure, neglect or refusal of another to perform under a contract or *submission* providing for arbitration, * * * may petition the Supreme Court, or a judge thereof, for an order directing that such arbitration proceed in the manner provided for in such contract or *submission*." (Italics the writer's.)

It seems from this wording of the statute that when the Grace Company withdrew, the Bullard Company could have compelled the conclusion of the arbitration only by complying with section 3 of the Arbitration Law. Section 3 of the Arbitration Law provides against the contingency that happened here when the arbitrators proceeded to act upon something which it was claimed that one side had not submitted and which the language of the submission does not conclude adversely to their contention. This section reads, in the applicable part, that the court hearing the application shall make an order directing the parties to proceed to arbitration in accordance with the terms of the contract or submission. The respondent has proceeded in disregard of this statute and has not obtained from the court an order directing that the arbitration proceed in accordance with the terms of the submission.

On the merits, it seems quite apparent that under the contract in question the dispute between the parties arising out of the contract cannot be concerned with any question of the quality of the commodity in view of the inspection certificates of the Argentine government which were contracted to be final as to quality, weight and grade. The award upon which the order and judgment are based was, therefore, void.

The order and judgment should, therefore, be reversed, with costs, and the judgment vacated.

CLARKE, P. J., DOWLING and SMITH, JJ., concur; MERRELL, J., concurs in result.

Judgment and order reversed, with costs, and judgment vacated.