**DELAWARE & HUDSON R. CORPORATION et al. v. WILLIAMS, et al.**

Nos. 7841, 7842.

Circuit Court of Appeals, Seventh Circuit.

June 18, 1942.

Rehearing Denied July 20, 1942.

Anan Raymond and Robert Z. Hickman, of Chicago, Ill., Joseph Rosch and James L. Fitzgerald, both of Albany, N. Y. (Poppenhusen, Johnston, Thompson & Raymond, of Chicago, Ill., of counsel), for appellant Delaware & Hudson R. Corporation.

Sydney R. Prince, Jr., of Baltimore, Md. (Sidney C. Murray, J. C. James, and C. H. Woods, all of Chicago, Ill., of counsel), for appellant E. W. Fowler and others.

Leo J. Hassenauer, of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

The plaintiff Railroad[1] complains of the District Court's dismissal[2] of its suit brought to force a Division of the National Railroad Adjustment Board to proceed, and conclude the arbitration proceedings of 170 employee-railroad disputes, 73 of which had been heard and a memorandum decision submitted by the Referee member of the Board. This Referee had been appointed by the National Mediation Board, pursuant to statute, upon certification that the Division, composed of five carrier members and five employee members, was deadlocked in its determination of these disputes.

The employees notified the Division of their withdrawal of these disputes from the Division's consideration. As to five cases, there has now been a *resubmission* to the Division, by the same disputants; and it was alleged that all the remaining cases would imminently be resubmitted, thereby burdening plaintiff with the undertaking anew of complete hearings thereof.

▮ The motion to dismiss was granted upon the pleadings, which consisted of complaint and answer. Fact allegations of the complaint must therefore be accepted as true.

The District Court's dismissal was presumably predicated on its lack of jurisdiction of a suit to compel the National Railroad Adjustment Board to proceed with the arbitration of disputes submitted to it.

The suit arises out of, and calls for the application of the Federal Railway Labor Act, 45 U.S.C.A. § 153 et seq., the pertinent provisions of which are set forth in the margin.[3]

---

[1] Five carrier members of the Division also appeal.

[2] The appeals are respectively from an order of September 17, 1941, dismissing the suit as to five employee division members who moved to dismiss, and later order of October 23, 1941, from the order of dismissal as to all the Division members, some of whom had filed an answer.

[3] "(h) The said Adjustment Board shall be composed of four divisions, whose proceedings shall be independent of one another * * *

"First division: To have jurisdiction over disputes involving train- and yard-service employees of carriers; * * * and yard-service employees. This division shall consist of ten members, five of whom shall be selected and designated by the carriers and five of whom shall be selected and designated by the national labor organizations of the employees.

&ast; &ast; &ast; &ast; &ast; &ast;

"(i) The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes *may* be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes.

"(j) * * * the * * * divisions * * * shall give * * * notice of all hearings to the * * * employees and the carrier * * * involved in any disputes submitted to them.

"(k) * * * *Provided, however*, That final awards as to any such dispute must be made by the entire division as hereinafter provided.

"(l) Upon failure of any division to agree upon an award because of a deadlock or inability to secure a majority vote of the division members * * *. Should the division fail to agree upon and select a referee * * * then the division, * * * may certify that fact to the Mediation Board, which Board shall * * * select and name the referee to sit with the division as a mem-

This Act received consideration by the Court in the case of Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089, but the controverted issue there presented was whether an employee *had* to pursue the administrative remedies under the Act before he could sue for a wrongful discharge. The Court held the employee's administrative and judicial remedies were concurrent, and he might resort to the courts before exhausting his administrative remedy.

More particularly, the facts in the instant suit are:

During the period beginning June 17, 1936, and ending August 23, 1939, there were referred to the First Division of the National Railroad Adjustment Board, 170 disputes between the Railroad and its employees, growing out of interpretation of working agreements concerning rates of pay. The Division is constituted of ten members, five representing the carriers and five the employees. The Division, being deadlocked, could reach no decision on the 170 disputes, and in accordance with the statute, the National Mediation Board appointed a "referee" to be the eleventh member of the Division, who would cast the deciding vote. The Board selected the Hon. Royal A. Stone, a justice of the Supreme Court of Minnesota.

The Division then held hearings on the 170 disputes. The hearings were concluded and the cases taken under advisement. On April 18, 1940, the Brotherhood of Locomotive Engineers notified the Division by phone and by wire of their withdrawal of all the disputes from the consideration of the Division.

On May 13, 1940, the Referee, Justice Stone, who had the determining vote, wrote the members of the Division a letter, accompanying a long and seriously thought out memorandum, disposing of the 73 disputes, generally in favor of the Railroad. We set forth excerpts from that letter and a letter which he sent to the Secretary of the National Mediation Board, in the margin.[4]

ber thereof and make an award. * * *

"(m) The awards of the several divisions of the Adjustment Board shall be stated in writing. A copy of the awards shall be furnished to the respective parties to the controversy, and *the awards shall be final and binding upon both parties to the dispute,* except insofar as they shall contain a money award. * * *

"(n) A majority vote of all members of the division of the Adjustment Board shall be competent to make an award with respect to any dispute submitted to it.

"(o) In case of an award by any division of the Adjustment Board in favor of petitioner, the division of the Board shall make an order, directed to the carrier, to make the award effective and, if the award includes a requirement for the payment of money, to pay to the employee the sum to which he is entitled under the award on or before a day named.

"(p) If a carrier does not comply with an order of a division of the Adjustment Board * * * the petitioner * * * may file in the District Court of the United States for the district in which he resides * * * a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises. Such suit in the District Court of the United States shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board shall be prima facie evidence of the facts therein stated * * *. The district courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, *by writ of mandamus or otherwise,* as may be appropriate to enforce or set aside the order of the division of the Adjustment Board.

"(q) All actions at law based upon the provisions of this section shall be begun within two years from the time the cause of action accrues under the award of the division of the Adjustment Board, and not after."

[4] "I am inclosing 11 copies of the memorandum I had in course of preparation concerning the Delaware & Hudson cases, so far as they had been submitted. I was holding it for revision and, if needed, such alteration as might be required by arguments I expected to have in the other cases. All the cases submitted to me having been withdrawn that ended the matter.

" * * * Please give one copy to each member of the First Division * * *

"I should add that my memorandum, as now submitted, is in substantially the form in which it was on the afternoon of the day on the evening of which you phoned me that all the cases had been withdrawn. If anybody doubts this, let him refer to Mr. Frohning's notes. If

The legal question in this case is one without a precise judicial precedent,—May a District Court, in a suit where mandatory relief is sought, direct the National Railroad Adjustment Board to proceed and dispose of railroad labor disputes, heretofore heard and submitted to it, but later withdrawn by the labor unions, when they become cognizant of the probability that the eleventh, and deciding, member of the Division was about to hold against them?

At common law, the rule was quite well settled that either party to an ordinary arbitration agreement might withdraw at any time prior to the announcement of the award. The cases on the subject are many.[5] These holdings arose from a desire *not to impair or diminish the jurisdiction of courts.* (Several decisions, however, held that, even at common law, there may be no revocation of submission to arbitration after the proceedings have been submitted for determination.[6])

We have progressed from the views

---

any question arises, I have and shall retain the memorandum as he transmitted it. * * *."

(The other letter.)

"On * * * April 20th, I was formally advised that my work as referee with the First Division of the Railroad Adjustment Board had *terminated because of the withdrawal of all the claims* which had been or were to be submitted to me. That, of course, ended my work.

"But inasmuch as, for 10 days, I was on government pay, and really had done much work, I want to complete the record, so far as I may, by filing with the First Division * * * showing the reasons for the decision I intended to make, so far as the cases had been submitted to me so far as I had gone in their consideration.

"There is, of course, an element of anomaly in a referee filing anything in the way of a decision in a matter in which he had been prevented from making a decision. But I trust that you will appreciate that in this case there are reasons why I would like the record in your office completed by filing therein the inclosed memorandum. * * *."

5 6 Corpus Juris Secundum, Arbitration and Award, § 31 et seq.; 3 American Jurisprudence, "Arbitration and Award," § 31. First Eccles. Society v. Besse, 98 Conn. 616, 119 A. 903; Bullard v. Morgan H. Grace Co., 210 App. Div. 476, 206 N.Y.S. 335; Wynne v. Greenleaf-Johnson Lbr. Co., 179 N.C. 320, 102 S.E. 403, 8 A.L.R. 1081; Long v. Cromer, 181 N.C. 354, 107 S.E. 217; Ames Co. v. Dexter Seed Co., 195 Iowa 1285, 190 N.W. 167; Dolman v. Bd. of Commissioners, 116 Kan. 201, 226 P. 240; Big Vein Co. v. Browning, 137 Va. 34, 120 S.E. 247; Dickie Mfg. Co. v. Sound Const. Co., 92 Wash. 316, 159 P. 129; Martin v. Vansant, 99 Wash. 106, 168 P. 990, Ann.Cas.1918D, 1147; Grand Rapids Co. v. Jaqua, 66 Ind.App. 113, 115 N.E. 73; Ferguson v. Rogers, 129 Ark. 197, 195 S.W. 22; Christenson v. Cudahy Co., 198 Cal. 685, 247 P. 207; Willis Co. v. Porter, 88 Cal.App. 523, 263 P. 842; Jones v. Jones, 229 Ky. 71, 16 S.W.2d 503; Polk v. Cleveland Co., 20 Ohio App. 317, 151 N.E. 808; Shafer v. Metro.-G.-M. D. Corp., 36 Ohio App. 31, 172 N.E. 689; Memphis Co. v. Brown-K. Iron Works, 6 Cir., 166 F. 398; Mason v. Bullock, 6 Ala.App. 141, 60 So. 432; Pizzini v. Hutchins, 70 Misc. 94, 127 N.Y.S. 1043; Cherry v. Smith, 51 Ga. 558; Minneapolis & St. L. Ry. Co. v. Cooper, 59 Minn. 290, 61 N.W. 143; Jones v. Harris, 59 Miss. 214; Huston v. Clark, 12 Phila. 383; Sidlinger v. Kerkow, 82 Cal. 42, 22 P. 932; Paulsen v. Manske, 24 Ill. App. 95; Oregon Bank v. American Mtg. Co., C.C., 35 F. 22; Smith v. Compton, 20 Barb.N.Y. 262; Parsons v. Ambos, 121 Ga. 98, 48 S.E. 696; Connecticut Fire Ins. Co. v. O'Fallon, 49 Neb. 740, 69 N.W. 118.

See, also, Western Female Seminary v. Blair, 1 Disn. Ohio 370; In re Ames Co., 190 Iowa 1259, 179 N.W. 105; Bash v. Christian, 77 Ind. 290; Gilbert v. Burnstine, 135 Misc. 305, 237 N.Y.S. 171; Carey v. Montgomery County Com'rs, 19 Ohio 245.

6 Hano v. Issac H. Blanchard Co., Sup., 199 N.Y.S. 227 (Could not be revoked where award written but not yet announced.) Pittsburgh Union Stock Yards Co. v. Pittsburgh Joint Stock Yards Co., 309 Pa. 314, 163 A. 668 (Arbitration held not revocable where no reason assigned for withdrawal.) Carey v. Montgomery County Com'rs, 19 Ohio 245 (Award decided but not delivered—too late to revoke.) Wagner v. Peshastin Co., 149 Wash. 328, 270 P. 1032 (arbitration clause could not be repudiated after dispute arose.)

In these cases arbitration agreements were held to be not revocable: Atterbury v. Trustees of Col. College, Sup., 123 N.Y.S. 25; Frederick v. Margwath, 221 Pa. 418, 70 A. 797, 18 L.R.A.,N.S., 1246; Jones v. Enoree Power Co., 92 S. C. 263, 75 S.E. 452, Ann.Cas.1914B, 293; McGheehen v. Duffield, 5 Pa. 497,

which existed at common law, and, deeming arbitration to be a desirable and effective means of expeditiously and finally settling labor and other disputes, many states have enacted legislation making contracts for arbitration, and submission thereunder, irrevocable.

The Federal Government has such an act dealing with another matter. 9 U.S.C. A. Sec. 1 et seq. Section 2 reads:

"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, *shall be valid, irrevocable, and enforceable,* save upon such grounds as exist at law or in equity for the revocation of any contract."

Section 4 of this Act provides:

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any court of the United States which, save for such agreement, would have jurisdiction under the judicial code at law, in equity, or in admiralty of the subject matter of the suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. * * * If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. * * * If * * * the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof."

Section 4 of this Act expressly provides, when the facts warrant the relief, the "court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof."

It must be conceded that this Act does not cover railroad employees' labor contracts. In fact, it excludes them specifically, and from the fact that there is another, a specific Act, covering such controversies, it may well be argued that we should entirely exclude this Act from our consideration. To show that Congress had in mind the same purpose, as when enacting the other legislation, our attention is called to Sec. 3(p) of the Railway Labor Act, which provides, "The district courts are empowered * * * to make such order * * *, by writ of mandamus or otherwise, as may be appropriate to enforce * * * the order of the division."

We are much impressed by the modern legislative and judicial trend in arbitration matters. Formerly, arbitration matters were frowned upon. They were, for the most part, futile, because the arbitration proceedings could be so easily thwarted.

We can not, and should not, ignore the changes which have taken place, and which find manifestation in Acts like the two above-quoted. Nor should we close our eyes to the facts behind such legislation. Most significant of such facts is the realization that we are dealing with railroad labor disputes, where the public interest is large. Peace in railroad labor relations, uninterruption in railroad movements, the public welfare, and a recognition of the commanding interest of the public in securing uninterrupted transportation services, are the worthy and much sought objectives of this legislation. They must, and do, afford the background for our construction of the Act and the powers of the court when called upon to assist in its enforcement.

The Court in the Moore case, supra, [312 U.S. 630, 61 S.Ct. 756, 85 L.Ed. 1089], gave expression to this view, when it said:

" * * * the legislative history of the Railway Labor Act shows a consistent purpose on the part of Congress to establish and maintain a system for peaceful adjustment and mediation voluntary in its nature."

We are helped to our conclusion by the equities of the situation.

Each of these relatively minor disputes had been heard in full by the Division. There is no question as to the adequacy, completeness, or fairness of the hearings. After such hearings, the cases were taken under advisement by the Division—and since the ten regular members thereof had been deadlocked, much depended on the judgment of the eleventh member. It was

---

5 Barr 497; Appeal of Lewis, 91 Pa. 359.

In the case of Tobey v. Bristol County, Fed.Cas. No. 14,065, it was held that an agreement to arbitrate cannot be made irrevocable.

possible he might sway some of the others, but it seems to be taken for granted that, as he decided, so would go the decision of the Division. He conferred with and consulted the other members of the Division, and they ·all, including the members representing the employees, were fully apprised of his determination. After such information came to the employees, they decided to withdraw the submission of their disputes. More, they wanted to take another chance, with the same administrative tribunal and try all over again—probably with the thought that the next time the referee, appointed upon the deadlock, would be favorable to them. At any rate, they couldn't lose by a withdrawal and another try.

But what of the railway? Should it be under the obligation to retry the disputed issues time and again? If there exists a right to withdraw a submission of disputes *once,* there could be no legal obstacle to repeated withdrawals, until the desired result be reached. Then, when the railroad should have prescience of a decision unfavorable to it, could it not too withdraw and start all over? When would there be a settlement of disputes under this sort of regime? Was this sort of inconstancy and obstructionist tactics permissible under this statute ostensibly enacted for expeditious settlement of disputes? Should we construe the Act as giving to one party a veto over the Board's appointment of the Referee? And worse still, may the party withhold the exercise of its veto until it learns how it will fare with said referee? To give such a construction to the Act, and to the relief which its enforcement demands, is to nullify and defeat the plain purpose of the Act. It is to give effect to efforts which are lacking in good faith, good sportsmanship, and good conscience.

In a somewhat similar case before this court, where the position of the parties was reversed, this court said,

"Equally well settled is the rule that one arbitrator or a minority of arbitrators cannot, after the dispute has been fully submitted to the Board, defeat an award by resigning, withdrawing, or otherwise refusing to participate in the hearings. * * * Such a resignation or withdrawal shortly before the time fixed for the expiration of the arbitration, constitutes a fraud and,· as such, defeats its purpose." Atchison, T. & S. F. R. Co. v. Brotherhood, 7 Cir., 26 F.2d 413, 417.

See also, the decision in Pittsburgh Union Stock Yards Co. v. Pittsburgh Joint Stock Yards Co., 309 Pa. 314, 163 A. 668.

■ We can see but one answer—a dispute once submitted and heard, may not be withdrawn, to be resubmitted for another try.

The basis of defendants' motion to dismiss, however, and the judgment of dismissal, was the lack of power in the District Court to grant relief in the nature of mandamus. Under the New Federal Rules of Civil Procedure, Rule 81(b), 28 U.S.C.A. following section 723c, "The writs of * * * mandamus are abolished. Relief heretofore available by mandamus * * * may be obtained by appropriate action or by appropriate motion under the practice prescribed in these rules."

■ The clarity of this phraseology leaves no doubt that the relief, mandamus in character, is not abolished. The rule merely provides for the same remedy under different procedure. That is the effect of the change. Morgenthau v. Barrett, 71 App.D.C. 148, 108 F.2d 481; George Allison & Co. v. I. C. C., 70 App.D.C. 375, 107 F.2d 180.

■ It must be kept in mind that the Federal District Court has jurisdiction to· hear the dispute itself. The Railway Labor Act provides for concurrent jurisdiction. See Moore case, supra. We have here a diversity of citizenship, a dispute involving more than $3,000, and a proceeding under a Federal statute, the object of which is to· settle labor disputes by arbitration.

■ Appellees contend that the division is an administrative tribunal whose orders are the result of its advised discretion. It therefore can not be compelled to proceed and make an award. The fallacy of this reasoning arises out of the failure to distinguish between the action of the court in· compelling an administrative tribunal *to act,* and a proceeding to compel the administrative tribunal to act in a *particular way.* Courts may not determine *how* the administrative tribunal shall act. They may,. however, compel such body *to act.* As was· held before the writ of mandamus was· abolished, in I. C. C. v. United States, 289· U.S. 385, 53 S.Ct. 607, 77 L.Ed. 1273, mandamus is a proper remedy to compel a judicial officer *to act.*

■ Although in many instances a writ of mandamus will not issue, the courts are

authorized to compel action through injunction when and if the facts warrant it. Vaughan v. John C. Winston Co., 10 Cir., 83 F.2d 370; Work v. Rives, 267 U.S. 175, 45 S.Ct. 252, 69 L.Ed. 561.

It seems to us, the turning point is not whether the court may compel action, but whether under the facts in the case and in view of the statute, the facts are such as to justify the court in acting. Denial of the relief is justified on only one of two grounds, namely, (a) the fact situation does not warrant the relief, or (b) the statute does not permit the relief's being given.

■ It appears tolerably clear that the court denied relief because it did not have jurisdiction to compel the division to proceed. If the denial evidenced the exercise of a discretion, some proof would have been received, otherwise the court had nothing upon which to make certain findings of fact, and without findings, there could have been no ruling on discretion. As the record now stands, we must accept the allegations set forth in the complaint. They left nothing for the play of discretion. Moreover, it would have been an abuse of discretion, if the issue turned upon the wise exercise of discretion, to refuse the relief sought.

We therefore conclude that the question is one of jurisdiction.

As to it, we hold that the court had jurisdiction to compel the division to act—not how to act—but to proceed and. reach the conclusion which in its judgment was the proper one.

Any other view would do injustice to the clear intent of Congress. It would defeat the object of the legislation. It would nullify the Act. It would make the arbitration proceedings a farce.

■ We were prompted to certify this question to the Supreme Court for its determination. However, the record is short, and the questions raised are as clear and explicit, as we could have presented them as certified questions. The Supreme Court alone must determine whether the case is one which it is justified in taking on certiorari.

The judgment is reversed with directions to proceed with the trial of the suit and to enter such judgment as the facts presented on the trial require.