**Harry TAYLOR et al.**

**v.**

**O. E. SWAN et al., State of California, Intervening Defendant.**

**No. 53 C 56.**

United States District Court
N. D. Illinois.
June 29, 1955.

Burke Williamson, Adams Williamson & Turney, Chicago, Ill., for plaintiffs.

Kenneth F. Burgess, Douglas F. Smith, Richard L. Selle, Sidley, Austin, Burgess & Smith, Chicago, Ill., for certain defendants.

Edward M. White, Chicago, Ill., Edmund G. Brown, Atty. Gen., of California, Herbert E. Wenig, Asst. Atty. Gen., of California, for intervening defendant.

Stanley N. Barnes, Asst. Atty. Gen., R. Tieken, U. S. Atty., James E. Kilday, Sp. Asst. to Atty. Gen., Frank J. Oberg, Sp. Asst. to Atty. Gen., for the United States.

HOFFMAN, District Judge.

This case is before the court on the motions for summary judgment filed by the plaintiffs, by the United States in support of the plaintiffs and by the State of California, intervening defendant. All of the parties are agreed that there is no issue of fact outstanding and that the case is ready for decision on the legal issues raised. Affidavits and briefs have been filed in support of the several motions, and the court has heard oral argument.

An account of the events which led to this action is necessary for an understanding of the issues.

On September 1, 1942, the California Board of State Harbor Commissioners (Harbor Board), which operates the state-owned State Belt Railroad, entered into an agreement covering rates of pay and working conditions with two railroad unions—the Brotherhood of Locomotive Firemen and Enginemen and the Brotherhood of Railroad Trainmen. The five plaintiffs in this action were at all material times employees of State Belt and members of one of the two Brotherhoods.[1] Grievances arose between each of the plaintiffs and State Belt respecting either wages claimed to be due, or proper classification, or seniority rights. After unsuccessful attempts at settlement at the carrier level, the Brotherhoods on behalf of the plaintiffs filed claims with the First Division of the National Railroad Adjustment Board. These claims were duly docketed with the Board on various dates between 1949 and 1951. The Adjustment Board was created by the Railway Labor Act, 45 U.S.C.A. § 151 et seq., to hear and make awards in

"disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions * * *." 45 U.S.C.A. § 153 First (i).

The Board, and each division thereof, is composed of equal numbers of representatives of the carriers and of the labor organizations.

[1]. Under the California constitution and laws the plaintiffs, as state employees, also belong to the state civil service system.

In the meantime, while the plaintiffs' claims were pending before the First Division of the Board, the State of California brought suit against the two Brotherhoods in the courts of that state seeking a declaration that the state was not subject to the provisions of the Railway Labor Act and that the contract of September 1, 1942, was invalid. On July 19, 1951, the Supreme Court of California handed down a decision, State v. Brotherhood of Railroad Trainmen, 37 Cal.2d 412, 232 P.2d 857, in which it held both that the Railway Labor Act was not intended to apply to the state-owned and operated State Belt Railroad and that the collective bargaining agreement was invalid under California law. The first holding evolved from a lengthy analysis of the traditional relationship between a governmental body and its employees under which wages and working conditions have always been established by statute and administrative regulation, never by collective bargaining. The court concluded that Congress had shown no intent to engage in such an "unprecedented interference" with this tradition, 232 P.2d at page 861. In holding the contract invalid, the court said that the Harbor Board was not authorized to bind the state to any particular wage rates without the approval of the Department of Finance, as required by Section 18004 of the Government Code.

> "The Department of Finance is given general powers of supervision over all matters concerning the financial and business policies of the state. * * * The purpose of such legislation is to conserve the financial interests of the state, to prevent improvidence, and to control the expenditure of state money by any of the several departments of the state." 232 P.2d at page 863.

The Supreme Court of the United States denied certiorari in this case, 1951, 342 U.S. 876, 72 S.Ct. 166, 96 L.Ed. 658.

Following this decision, the five carrier members of the First Division of the Adjustment Board directed a letter on February 25, 1952, to the five labor members in which they called attention to the California court's ruling. The letter concluded:

> "Therefore this Division has no jurisdiction and this is to advise you that the Carrier Members will not participate in the handling of the following State Belt Railroad of California dockets other than to dismiss them".

The claims filed by the five plaintiffs in this case were among those listed.

Faced with this administrative deadlock, the plaintiffs whose grievances were left pending and unresolved filed this suit for an injunction to compel the members and the executive secretary of the First Division of the Adjustment Board to take jurisdiction of their claims and to consider and decide them consistently with the provisions of the Railway Labor Act. The plaintiffs do not—and clearly they would have no right to—seek to require the Board or any of its members to decide the grievances in a particular way.[2] They ask only that the Board decide them in some way.

In their answer and briefs the defendant carrier members have argued that the plaintiffs brought the wrong action against the wrong parties. The correct action, it is said, would have been a suit for declaratory judgment against the state of California seeking a statement, or restatement, of the rights of the Brotherhoods and State Belt. The carrier members contend that in any event the Board, by the action of the carrier members, has concluded, correctly, that the questions raised by these submissions are not the kind which it was intended to resolve and that its conclusion to this effect cannot be reviewed in any manner by a court.

2. It is not questioned that the claims themselves raise issues intended for settlement exclusively by the Adjustment Board. In this case the court is concerned only with the preliminary questions injected into the dispute by the legal effect which the carrier members accorded to the California decision.

The State of California, which was given leave to intervene as a defendant, relies chiefly on the principles of res judicata in support of its motion for summary judgment. The California decision, it says, was conclusive on these parties as to the applicability of the Railway Labor Act and the validity of the contract, and the carrier members properly followed that decision. California has also argued that the jurisdiction of the Adjustment Board extends only to valid and existing collective bargaining contracts and that it has no jurisdiction to decide the question of validity, that an award on these claims, if ultimately made, could not be enforced against the state because of the Eleventh Amendment, and that the 1942 contract itself provided for a system board of adjustment to supplant the federal Adjustment Board machinery within the meaning of the Railway Labor Act, 45 U.S.C. A. § 153 Second.

The United States, which answered on behalf of all of the members and the executive secretary of the First Division of the Board, admitted all the allegations of the complaint and joined in the plaintiffs' prayer for relief. The United States, in addition, moved for summary judgment contending that State Belt is subject to the Railway Labor Act, that the California court did not pass on the question of whether or not the Act supersedes technical contract requirements of state law, and that it is not necessary to determine the validity of the contract in this action, but only that the claims before the Board arose out of disputes as to the interpretation or application of a purported agreement and involved persons subject to the Act.

The principal points made by the plaintiffs are that State Belt is subject to the Railway Labor Act and that the California court had no jurisdiction to pass on this question, that res judicata is not applicable to these facts, and that the objectives of the Railway Labor Act cannot be nullified by California statutes establishing inconsistent civil service regulation of the wages and working conditions of State Belt employees or requiring special approval by higher state authority of an agreement concluded with the railroad unions.

At the outset, the court is required to consider whether it lacks jurisdiction to interfere in this dispute at all. The scheme of the Railway Labor Act contemplates that both the creation of the collective bargaining relationship and the settlement of disputes that may arise under it are to be accomplished without the interference of the courts. In addition, Section 3 First (*l*) of the Act, 45 U.S.C.A. § 153 First (*l*), provides that upon failure of the Division to agree upon an award because of deadlock or inability to secure a majority vote, a referee is to be selected in the manner set out in that subsection. Whether the selection of a referee is required only in case of an even division on the merits of an award (as the language of the Act seems to read), or whether one must be also appointed to resolve a deadlock on a preliminary jurisdictional question is not settled. In some cases the courts have entertained and decided a jurisdictional dispute [3] in situations where the carrier and union members disagreed, and a referee had not participated. Order of Railway Conductors v. Swan, 1947, 329 U.S. 520, 67 S.Ct. 405, 91 L.Ed. 471; Brotherhood of Railroad Trainmen v. Swan, 7 Cir., 1954, 214 F.2d 56; cf. Townsend v. National Railroad Adjustment Board, D.C.N.D.Ill.1954, 117 F.

---

**3.** This is not to be confused with the cases involving an interunion jurisdictional conflict. The Supreme Court has not permitted the courts to interfere in these disputes before the Adjustment or Mediation Board has had an opportunity to consider them. Slocum v. Delaware, L. & W. R. Co., 1950, 339 U.S. 239, 70 S.Ct.

577, 94 L.Ed. 795; Order of Railway Conductors v. Pitney, 1946, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318; General Committee of Adjustment of Brotherhood of Locomotive Engineers v. Missouri, K.-T. R. Co., 1943, 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76.

Supp. 654. Only the Court of Appeals for the Seventh Circuit has specifically held that the referee sits only to make an award and that this presupposes that all jurisdictional requisites have been met. Illinois Central R. Co. v. Whitehouse, 7 Cir., 1954, 212 F.2d 22, reversed 75 S.Ct. 845. In that case the Court of Appeals affirmed an order of the district court enjoining the Adjustment Board from proceeding to hear the merits of a claim until it gave formal notice, which the court held to be jurisdictional, to an interested union which was not a party to the submission. A referee had been appointed to participate on the merits of the dispute, but he did not vote on the question of giving notice. This was found to be in accordance with the Act which authorizes the referee to sit only in case of deadlock on the making of an award. In reversing, the Supreme Court confined its decision to the narrow holding that the plaintiff railroad's injuries were in the circumstances of that case too speculative to warrant resort to the extraordinary remedy of mandamus, thus leaving unanswered the question of the power of a referee to participate in this sort of preliminary determination as well as some of the broader questions as to the circumstances, admittedly limited, under which a court might resolve legal issues raised before the Board. It also appears from the opinion that the Court probably eliminated the force of the Whitehouse case as a precedent here by impliedly holding that notice was not in any event jurisdictional in the sense that the Board had no authority to proceed without giving it.

■ Unlike the Whitehouse case where the Board, with the aid of the referee, was willing to reach a decision on the merits of the claims presented, this Board cannot. The carrier members firmly refuse to participate in the submissions other than to dismiss them, and the court interprets this to mean that they would also decline to participate in selecting a referee. The integrity of the Board's exclusive, or primary, jurisdiction surely does not authorize one-half of the Board to take actions delegated by the Act to the entire Board. In addition, the Supreme Court has in other circumstances said that where the dispute is as to the validity of a contract,[4] not its meaning, the courts, rather than the Mediation or Adjustment Board, are the appropriate tribunal. Brotherhood of Railroad Trainmen v. Howard, 1952, 343 U.S. 768, 774, 72 S.Ct. 1022, 96 L.Ed. 1283. Cf. Switchmen's Union of North America v. Ogden Union Railway & Depot Co., 10 Cir., 1954, 209 F.2d 419, 421, certiorari denied, 1954, 347 U.S. 989, 74 S.Ct. 852, 98 L.Ed. 1123. Thus, the plaintiffs were confronted with a true administrative deadlock on a jurisdictional issue which this court may pass upon, and they properly brought the dispute to court. Order of Railway Conductors v. Swan, 1947, 329 U.S. 520, 67 S.Ct. 405, 91 L.Ed. 471 (evenly divided vote within each of two Divisions of the Board as to which Division had jurisdiction over the disputes of a certain group of employees);

4. Actually the Board was faced with three questions, all of which go to its authority to hear these particular claims: (1). the applicability of the Railway Labor Act to State Belt; (2) the validity of the contract on which the claims were based; and (3) the legal effect of the California decision on both of these issues. If the only question had been whether State Belt was subject to the Act, this court might well have left the initial decision to the Board. To a great extent this jurisdictional ruling is inherent in every Board decision. But the carrier members were right in concluding that the first question was the effect of the California decision. Viewed in this way, it seems particularly unlikely that exclusive jurisdiction to pass on this point would be lodged in the Board. The Board is not the typical quasi-judicial administrative agency. Its members are actually representatives of the two parties to most disputes before the Board, and their particular contribution is that they "understand railroad problems and speak the railroad jargon." Slocum v. Delaware L. & W. R. Co., 1950, 339 U.S. 239, 243, 70 S.Ct. 577, 579, 94 L.Ed. 795.

Brotherhood of Railroad Trainmen v. Swan, 7 Cir., 1954, 214 F.2d 56; Air Line Dispatchers Association v. National Mediation Board, 1951, 89 U.S.App. D.C. 24, 189 F.2d 685, certiorari denied 1951, 342 U.S. 849, 72 S.Ct. 77, 96 L.Ed. 641; Delaware & Hudson R. Corp. v. Williams, 7 Cir., 1942, 129 F.2d 11, judgment vacated, 1942, 317 U.S. 600, 63 S.Ct. 256, 87 L.Ed. 490.

■ Having decided, however, that the plaintiffs correctly sought judicial intervention, the court must disagree with them on the merits. The several parties to this action have raised many difficult issues, any one of which could dispose of the case in one way or another. But the court has determined that it must give conclusive effect to that part of the California decision which held the collective bargaining contract invalid as a matter of state law.

It should be noted that this does not constitute acceptance or approval of the California court's holding that State Belt is not subject to the Railway Labor Act. The soundness of this conclusion is doubtful. The Court of Appeals for the Fifth Circuit has held the New Orleans Public Belt Railroad, similarly a state-owned carrier engaged in interstate commerce, subject to the Act, expressly disapproving the California decision. New Orleans Public Belt R. Commission v. Ward, 5 Cir., 1952, 195 F.2d 829. Moreover, State Belt has been held subject to other federal regulatory acts. United States v. California, 1936, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567 (Safety Appliance Act); State of California v. Anglim, 9 Cir., 1942, 129 F.2d 455, certiorari denied, 1942, 317 U.S. 669, 63 S.Ct. 74, 87 L.Ed. 537 (Carriers' Taxing Act); Maurice v. California, 1941, 43 Cal.App.2d 270, 110 P.2d 706 (Federal Employers' Liability Act). On the other hand, the state of California has made a persuasive argument that this situation must be distinguished because the states traditionally have exercised exclusive domain over the terms and conditions of employment of their own workers and the Railway Labor Act was not intended to require California to abandon its civil service system. It is not necessary to resolve this conflict, nor is the court called upon to decide whether the California holding of inapplicability of the Act, right or wrong, is res judicata as to these parties. Compare Angel v. Bullington, 1947, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832. Ordinarily, of course, federal courts have the final responsibility for interpreting acts of Congress as well as the federal Constitution.

■ By the same token, however, California has the final right to determine whether or not the Harbor Board has exceeded its powers under state law by entering into this agreement. The parties have devoted considerable argument to the applicability or non-applicability of res judicata to this part of the California decision. While the question is not free from doubt, it would seem that the Brotherhoods, which are the real parties in interest to the submissions, and the state of California (State Belt), the defending party before the Board, should be precluded from relitigating the question. Restatement, Judgments §§ 70, 77 (1942); Scott, Collateral Estoppel by Judgment, 56 Harv.Rev. 1, 7 ff., 11–12, 15 (1942). Whether or not res judicata bars relitigation of the validity of the contract, the decision of the California court that this contract was invalid as a matter of state law cannot be re-examined or nullified by this court. The California Supreme Court is the final arbiter of the meaning of the state's statutes and of the validity of contracts entered into by the state, and the federal courts are bound by its construction. State of Louisiana ex rel. Francis v. Resweber, 1947, 329 U.S. 459, 461–462, 67 S.Ct. 374, 91 L.Ed. 422; Aero Mayflower Transit Co. v. Board of Railroad Commissioners of State of Montana, 1947, 332 U.S. 495, 499, 68 S.Ct. 167, 92 L.Ed. 99; Independent Warehouses, Inc., v. Scheele, 1947, 331 U.S. 70, 86–87, 67 S.Ct. 1062, 91 L.Ed. 1346; Moore v. Illinois Central R. Co., 1941, 312 U.S. 630, 633–634, 61 S.Ct. 754, 85 L.Ed. 1089.

Only an overriding federal policy to which the state must give way would justify us in ignoring the declared invalidity of this agreement. The plaintiffs have contended that the California legislature has no right to enact regulations governing the contractual powers of a carrier subject to the Railway Labor Act and that to permit California to nullify this agreement is to sacrifice the broad objectives of the Act to a technical vindication of state policy wholly unrelated to the promotion of peace and stability in interstate railway transportation. Assuming for the moment that this contract enjoyed the initial protection of the Railway Labor Act, it does not follow that the invalidation of it inevitably runs afoul of that Act. This case seems hard because the contract was not upset until some eight years after it was signed, and the lapse of time might be expected to produce confusion as to the rights of all who were parties to the agreement. On the other hand, it has now been several years since the contract was invalidated, and we are not informed of any serious disruption in the relationship between the two Brotherhoods and State Belt. Unquestionably they have found something—whether a new and valid contract or a more informal arrangement—to take the place of the invalid contract. It may well be that a state which owned a carrier subject to the Act could not create obstacles so difficult to overcome that for all practical purposes the employees were denied the machinery of the Act.[5] California has not done that. It has declared only that this particular contract is invalid because Harbor Board had no authority to conclude it without the approval of the Department of Finance. It does not appear, as the plaintiffs contend, that this was merely a technical objection. The opinion of the California Supreme Court indicates that the Department of Finance is the financial watchdog of state

government and that its responsibility to all the people of the state was to supervise and harmonize the expenditure of funds by the various departments. This would seem to require that it have prior knowledge of substantial wage commitments. Nor does the requirement of Department of Finance approval of this agreement violate the established concept of good faith bargaining written into the Railway Labor Act. Compare Great Southern Trucking Co. v. National Labor Relations Board, 4 Cir., 1942, 127 F.2d 180, certiorari denied, 1942, 317 U. S. 652, 63 S.Ct. 48, 87 L.Ed. 524.

Since the court has concluded that the plaintiffs' claims did not arise out of a valid, existing contract, the carrier members were correct in saying that the Adjustment Board had no jurisdiction and the submissions should be dismissed. This is a fair conclusion from the language of the Supreme Court in Brotherhood of Railroad Trainmen v. Howard, 1952, 343 U.S. 768, 774, 72 S.Ct. 1022, 96 L.Ed. 1283, and Slocum v. Delaware, L. & W. R. Co., 1950, 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795. Conceivably the language of Section 3 First (i), "disputes * * * growing out of grievances or out of the interpretation or application of agreements", is broad enough to permit the submission of claims under some circumstances when an existing agreement is lacking. Even so, the only claims involved in this case are based exclusively on the 1942 contract. Whatever grievance may still exist, it is not the one incorporated in the documents submitted to the Board.

The motion of the State of California for summary judgment in favor of the defendants is granted. The motions of the plaintiffs and of the United States for summary judgment are denied.

Counsel for the State of California will prepare formal judgment order and present same for the signature of the court on or before July 8, 1955.

5. A more difficult question would be presented if the California court had held that state civil service regulations, some of which conflicted with provisions of the contract, could never be superseded by terms arrived at by collective bargaining between the employees of State Belt and the Harbor Board.