## PATTERSON v. CHICAGO & EASTERN ILLINOIS R. CO. et al.

### No. 4436.

District Court, N. D. Illinois, E. D.

May 3, 1943.

et seq., 152.

Carson & Appleman, of Urbana, Ill., and Charles F. Short, Jr., of Chicago, Ill., for plaintiff.

Rawlins & Wright and T. N. Cook, all of Chicago, Ill., for defendant.

HOLLY, District Judge.

Plaintiff, a former employe of the Chicago and Eastern Railroad Company, hereinafter referred to as the Railroad, who claims that he was wrongfully discharged by the Railroad, has filed his complaint herein praying that a writ of mandamus be issued directed to the National Railroad Adjustment Board Second Division (hereinafter referred to as the Board) commanding it to hear the controversy between plaintiff and the Railroad upon the merits and enter an award therein. In the alternative he asks for a money judgment as damages for the wrongful discharge or that under the terms of the Federal Declaratory Judgment Act this court enter a declaratory judgment adjudging the rights of all the parties herein.

I am of the opinion that an order should be issued directing the board to hear and determine the case.

Congress by 45 U.S.C.A. § 151 et seq. (the National Labor Railway Act) created a Board to be known as the National Railroad Adjustment Board for the purpose of hearing disputes between carriers and their employes. The purpose of the Act, Section 151a, is stated to be to avoid any interruption of commerce or the operation of any carrier engaged therein and, among other things, to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules or working conditions and disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions.

It is further provided, Section 152, that all disputes between the carrier and its employes shall be considered and, if possible, decided with all expedition in conference between representatives designated and authorized so to confer, respectively, by the carrier and the employes thereof interested in the dispute. Representatives for this purpose shall be designated by the respective parties without interference by the other and representatives of the employes need not be persons in the employ of the carrier. Employes are given the right to organize and bargain collectively through representatives of their own choosing, the majority of any craft or class of employes to have the right to determine who shall be representative of the craft or class. In the case of a dispute between the carrier and its employes arising out of a grievance or out of an interpretation or application of an agreement concerning rates of pay, rules or working conditions it is made the duty of the designated representative or representatives of such carrier and such employes, within ten days after the receipt of notice of the desire of either to confer with respect to such dispute, to specify a time and place at which such conferences shall be held. Section 153 provides for the establishment of a Board and its composition by divisions, the second division to have jurisdiction over disputes involving machinists, boilermakers, blacksmiths, car men and the helpers and apprentices of the foregoing, coach cleaners, power house employes and railroad shop laborers. It seems to be conceded that plaintiff's employment brings

him within the group mentioned in this division. It is further provided by said Section, subdivision (i), that disputes between an employe and a carrier growing out of grievances or out of an interpretation or application of agreements concerning the rates of pay rules, or working conditions shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes but, failing to reach an adjustment in this manner, the dispute may be referred by petition of the parties or by either party to an appropriate division of the Adjustment Board and, subsection (j), that the parties may be heard either in person, by counsel or by their representatives, as they may respectively elect, and the appropriate division of the Adjustment Board shall give due notice of all hearings to the employes and the carrier involved in the dispute.

A majority vote of all members of the Division is competent to make an award with respect to any dispute submitted to it.

In his complaint plaintiff alleges that in violation of his seniority rights he was dismissed from employment by the Railroad on September 3, 1931, the carrier stating at the time that he was laid off because of the depression and the decrease of business; that he complied with all the regulations of the Railroad concerning the maintenance of his position of seniority but that the Railroad has wrongfully refused to reinstate him as an employe; that on May 8, 1933, in reply to his protest against the failure to give him the employment due him by virtue of seniority the Vice President wrote him a letter stating that in view of injuries which he claimed to have sustained resulting in a suit filed by him against the company it would be inconsistent for the Railroad to do otherwise than omit his name from the seniority roll.

Again on or about November 8, 1933, he received a letter signed by Charles M. Thomson, who had been appointed as trustee of said Railroad by a Federal Court, said letter being dated November 8, 1933, in which said trustee stated that he had carefully examined all the records which had to do with plaintiff's employment; that the agreement between the company and its employes provides that any employe laid off by reason of the making of a reduction in the number of the company's forces who is not recalled before December 31 of the next year after such reduction is made will be dropped from the seniority list and will be considered out of the service and if re-employed will enter the service as a new man; that there was no occasion to re-employ men after plaintiff was laid off at any time between the date of his lay-off and December 31, 1932. The letter concluded with the statement that in view of the situation there was nothing whatever that could be done at that time to grant the request of plaintiff that he be restored to his seniority position.

Plaintiff further avers that at the time of his employment and discharge there was no labor union which included his employment as coal chute laborer and that he was not at that time and is not now a member of any union which could act upon his behalf; that he attempted to prevail upon the union now controlling employes of his type to present his claim to the Board but that the union replied that it could not and would not represent him because he had not been a member at the time of his wrongful discharge; that having been unable to adjust his claim with the proper officers of the Railroad he filed his complaint with the National Railroad Adjustment Board praying re-instatement to his full seniority rights together with back pay from the time of his wrongful discharge but said Board entered an order on March 31, 1942, that it would not assume jurisdiction over the matter nor hear the controversy for the reason that the petition was presented by an individual rather than by a union on his behalf and that this had been a consistent practice by all divisions of the Board in all cases presented by individuals.

The motion to dismiss is based upon these two propositions set out in the brief of the Board.

"(A) The plaintiff did not conduct his *negotiations with the carrier* in the manner provided by statute and, therefore, the National Railroad Adjustment Board, Second Division, had no jurisdiction.

"(B) The plaintiff-employee did not properly present his grievance to the National Railroad Adjustment Board, Second Division, as provided by statute and Agreement, and, therefore, the National Railroad Adjustment Board, Second Division, had no jurisdiction."

■■ First: Did plaintiff conduct his negotiations with the railroad in the manner provided by statute? The statute, Section 152 (Second) provides that the dispute between the carrier and its employees shall be considered and if possible decided with all expedition in conference between *representatives* designated and authorized so to confer, but I do not think that Congress meant to exclude from consideration by the Board disputes between the carrier and employees not members of a union. All that is important is that the parties to a dispute make an honest effort to settle their differences before burdening the Board with them. It is true that where the employees of a craft or class have organized and by majority vote selected a representative negotiations for settlement are to be carried on by the representative selected by the organization. But I do not think the benefits of the act are confined to employees who are organized.

■ There was no organization, at the time of plaintiff's discharge, of the employees engaged in the kind of work plaintiff was doing. A union of such employees was organized in 1939, long after plaintiff's discharge and it could not be said to represent him. He did, however, request the organization to take up his case but it refused on the ground that he was not a member. He had no one to represent him. He did, however, in person take up his case with officials of the Railroad, conferring first with the President of the Road who referred the matter to the Vice President and General Manager who denied his request. This was confirmed by the Trustee who was operating the Railroad. There could be no need for further conferences. In my opinion he had done all he was required to do in the way of attempting to settle the dispute.

■ The other question remains, does the Board have jurisdiction to determine a dispute between a carrier and an individual employe, unrepresented by an organization or is its jurisdiction limited to a dispute brought to it by a carrier or an organization of its employes? I am of the opinion that in a case where there is a dispute between the carrier and individual employee who has no organization to represent him, that is, where there is no organized group of which he could become a member, he may himself present his dispute to the Board and demand a hearing.

In Section 153(j) it is provided that on the hearing the parties may be heard either *in person* or by counsel or by other representatives, as they may elect. This provision indicates, it seems to me, that the Board should hear controversies presented by the individual, where there is no organization authorized by the Act to represent him.

The Committee appointed by the Attorney General to deal with the question of procedure before the Board appears to be of the opinion that the Act contemplates the hearing by the Board of cases presented by individuals. It has indicated this view in its report, Monograph 17. That is also the opinion of the Court in Washington Terminal Co. v. Boswell, 75 U.S.App.D.C. 1, 124 F.2d 235, 240, although I realize that the expression of the court on this subject was, probably, dictum.

■ Assuming the allegations of the complaint, to be true, as I must for the purpose of this motion, I am of the opinion that the Board erred in refusing to take jurisdiction of this case.

■ Plaintiff prays for a writ of mandamus to compel the Board to hear the case. The writ of mandamus has been abolished. Federal Rules of Civil Procedure rule 81 (b), 28 U.S.C.A. following section 723c, but the court may, when appropriate, by order direct the Board to hear the case.

An order accordingly will be entered.