**BROTHERHOOD OF LOCOMOTIVE ENGINEERS, Plaintiff,**

v.

**NATIONAL MEDIATION BOARD et al., Defendants.**

**Civ. A. No. 2060-66.**

United States District Court
District of Columbia.
April 26, 1968.

Barclay D. McMillen, Washington, D. C., Harold A. Ross, Ross & Kraushaar, Cleveland, Ohio, for plaintiff.

Francis M. Shea, Richard T. Conway, David W. Miller, Washington, D. C., James R. Wolfe, Chicago, Ill., for carrier defendants.

Joseph L. Rauh, Jr., Rauh & Silard, Isaac N. Groner, Cole & Groner, Washington, D. C., for defendant, Brotherhood of Locomotive Firemen and Enginemen.

Paul A. Sweeney, Sp. Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for defendant National Mediation Bd.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIRICA, District Judge.

On the basis of the pleadings and affidavits on file, the Court hereby makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Each of the defendants Louisville & Nashville Railroad Company, Southern Pacific Company, Great Northern Railway Company, Illinois Central Railroad Company, Atlantic Coast Line Railroad Company, and St. Louis Southwestern Railway Company is a "carrier" as defined in Section 1, subd. First of the Railway Labor Act (45 U.S.C. § 151, subd. First).

2. The plaintiff Brotherhood of Locomotive Engineers (hereinafter called the "BLE"), and the defendant Brotherhood of Locomotive Firemen and Enginemen (hereinafter called the "BLF&E") are unincorporated labor organizations which represent certain employees of the carrier defendants and of various other carriers for purposes of the Railway Labor Act (45 U.S.C. § 151 et seq.).

3. The defendant National Mediation Board (hereinafter called the "NMB") is an agency of the federal government which has certain duties, powers, and functions under the Railway Labor Act (45 U.S.C. § 154).

4. In the railroad industry, the representation of employees by labor organizations is and for many years has been on the basis of crafts or classes of employees.

5. There are and for many years have been two crafts or classes of engine service employees, that is, employees whose basic duties are confined to service in the cabs of locomotives: locomotive engineers and locomotive firemen.

6. The BLE is and for many years has been the duly designated and authorized representative of the craft or class of locomotive engineers on each of the carrier defendants and on most of the other railroads in the United States. On each carrier where that is true, it is undisputed that under the Railway Labor Act the BLE is the exclusive representative of all of the carrier's employees within the craft or class of locomotive engineers and is the only organization authorized to serve upon the carrier under Section 6 of the Railway Labor Act (45 U.S.C. § 156) notices of proposals to change the rates of pay, rules, or working conditions applicable to the craft or class of locomotive engineers, to confer, negotiate, or bargain with the carrier about such proposals, and to enter into agreements with the carrier about the rates of pay, rules, and working conditions applicable to the craft or class of locomotive engineers.

7. The BLF&E is and for many years has been the duly designated and authorized representative of the craft or class of locomotive firemen on each of the carrier defendants and on most of the other railroads in the United States. On each carrier where that is true, it is undisputed that under the Railway Labor Act the BLF&E is the exclusive representative of all of the carrier's employees within the craft or class of locomotive firemen and is the only organization authorized to serve upon the carrier under Section 6 of the Railway Labor Act (45 U.S.C. § 156) notices of proposals to change the rates of pay, rules, or working conditions applicable to the craft or class of locomotive firemen, to confer, negotiate, or bargain with the carrier about such proposals, and to enter into agreements with the carrier about the rates of pay, rules, and working conditions applicable to the craft or class of locomotive firemen.

8. There is no existing separate craft or class of employees, for purposes of the Railway Labor Act, designated or known as "engine service employees" or "locomotive enginemen." The term "engine service employees" is commonly understood in the railroad industry to refer to both locomotive engineers and locomotive firemen.

9. Locomotive engineers generally are needed and used on all locomotives operated by a carrier. Prior to the effectuation of the Award by Arbitration Board No. 282, agreements between the carriers and the BLF&E generally required that a locomotive fireman be used on each locomotive operated by a carrier. That Award, which was issued on November 26, 1963, pursuant to Public Law 88–108 (77 Stat. 132), generally authorized the carriers to eliminate up to ninety percent of locomotive fireman positions on locomotives in freight and yard service.

10. For many years, the carriers' needs for additional locomotive engineers had been met primarily, although not exclusively, by the promotion of qualified

locomotive firemen to the craft or class of locomotive engineers. When a locomotive engineer is no longer needed as such, because of fluctuations in the carrier's business or other reasons, he may be demoted, according to his seniority, to the craft or class of locomotive firemen. The collective bargaining agreements between each carrier and the BLE and the collective bargaining agreements between that carrier and the BLF&E contain substantially identical provisions concerning the promotion of qualified locomotive firemen to locomotive engineers and the demotion of unneeded locomotive engineers to locomotive firemen. Those provisions were adopted by the Director General of Railroads in 1919, when the railroads were being operated by the Federal Government, and have been retained, with some modifications, ever since. They do not specify the training required before a locomotive fireman may be qualified for promotion to locomotive engineer or a locomotive engineer may be hired by a carrier.

11. A locomotive fireman who has been promoted to the craft or class of locomotive engineers thereafter is represented by the BLE (except on those few railroads on which the craft or class of locomotive engineers is represented by the BLF&E) for as long as he remains a member of that craft or class; ·he is no longer represented by the BLF&E; and the rates of pay, rules, and working conditions established by the carrier with the BLE, rather than the rates of pay, rules, and working conditions established by the carrier with the BLF&E, are applicable to such individual. When a locomotive engineer has been demoted to the craft or class of locomotive firemen, thereafter he is represented by the BLF&E (except on those few railroads on which locomotive firemen are represented by the BLE) for as long as he remains a member of that craft or class; he is no longer represented by the BLE; and the rates of pay, rules, and working conditions established by the carrier with the BLF&E, rather than the rates of pay, rules and working conditions established by the carrier with the BLE, are applicable to such individual.

12. Prior to the effectuation of the Award by Arbitration Board No. 282 (Finding of Fact 9, above), the needs of the carriers for additional locomotive engineers generally could be fully satisfied through the promotion of qualified locomotive firemen and the hiring of persons otherwise qualified to become locomotive engineers. There was no necessity for a program to train apprentices to become locomotive engineers, and none of the carriers had such a program. As the number of locomotive firemen employed by the carriers, and thus the number of locomotive firemen qualified for promotion to locomotive engineers, has been reduced following effectuation of the Award by Arbitration Board No. 282, the defendant Louisville & Nashville Railroad Company has found it necessary to provide an additional source for obtaining locomotive engineers. Other carrier defendants and other railroads foresee a similar need within the near future.

13. In order to meet its needs for locomotive engineers, the defendant Louisville & Nashville Railroad Company determined it to be necessary, in April 1966, to establish a program for the training of apprentices to become locomotive engineers. On April 28, 1966, that carrier and the BLE entered into an agreement establishing the rate of pay applicable to such apprentices. While the Louisville & Nashville continues to promote qualified and available locomotive firemen to positions as locomotive engineers, part of its need for additional locomotive engineers is now being met by hiring apprentices who have successfully completed the apprentice training program and qualified to become locomotive engineers. The BLE has been recognized by the Louisville & Nashville as the designated and authorized bargaining representative of the apprentices, and the BLF&E has not applied to the NMB for an investigation to determine whether someone other than the BLE should be certified as the desig-

nated and authorized representative of such apprentices.

14. The defendant Great Northern Railway Company and the BLE entered into an agreement concerning the future training of apprentices to become locomotive engineers on September 13, 1967. Apart from the Louisville & Nashville and the Great Northern, none of the carrier defendants has yet established a program for training apprentices to become locomotive engineers. In some instances, the establishment of such a program has been delayed by the dispute between the BLE and the BLF&E as to which organization is entitled to represent apprentices training to become locomotive engineers, but some of the carrier defendants and other railroads believe that the establishment of such an apprentice training program within the relatively near future will be essential in order to assure them of an adequate supply of qualified locomotive engineers.

15. On or about March 25, 1965, the BLF&E served upon the defendant Louisville & Nashville Railroad Company a notice, purportedly pursuant to Section 6 of the Railway Labor Act (45 U.S.C. § 156), which proposed the establishment of an apprentice training program. On or about April 28, 1965, the BLF&E served upon the defendant Southern Pacific Company a notice, purportedly pursuant to Section 6 of the Railway Labor Act, which proposed the establishment of an apprentice training program. On or about November 15, 1965, the BLF&E served upon each of the carrier defendants except the Louisville & Nashville Railroad Company and upon more than 100 other railroads throughout the United States a notice, purportedly pursuant to Section 6 of the Railway Labor Act; this notice consisted of three parts identified as "Notice No. 1," "Notice No. 2," and "Notice No. 3"; the part designated as "Notice No. 3" proposed the establishment of an apprentice training program. "Notice No. 3" and the notices served upon the Louisville & Nashville and the Southern Pacific, described above, are hereinafter called the "apprentice notices."

16. In its apprentice notices, the BLF&E proposed to require the carriers to establish a program for the training of apprentices who, upon successful completion of the program, would become qualified and receive seniority as locomotive engineers, and those notices otherwise relate to the training of apprentices to become locomotive engineers.

17. In correspondence with the carriers shortly after the BLF&E's apprentice notices had been served, the BLE claimed that those notices encroached upon its jurisdiction as the representative of the craft or class of locomotive engineers and that the carriers could not lawfully bargain or agree with the BLF&E upon the apprentice training program proposed in those notices. The BLE has since consistently maintained that position before the NMB and in this Court, as well as otherwise, and threatens to strike and engage in other self-help against any carrier that confers, negotiates, or otherwise agrees with the BLF&E upon the merits of its apprentice notices.

18. In correspondence with the carriers and the NMB and before this Court, the BLF&E has claimed and it now claims that its apprentice notices come within its jurisdiction as the representative of the craft or class of locomotive firemen and that the carrier defendants and the other carriers served with the said notices are required by the Railway Labor Act to confer, negotiate, and otherwise bargain with the BLF&E about the merits of the proposals made therein. There is substantial likelihood that the BLF&E, if not restrained by the court, will engage in strikes or other self-help against the carriers with respect to those proposals if the procedures of the Railway Labor Act are exhausted without an agreement being reached between the said carriers and the BLF&E.

19. Since the BLF&E's apprentice notices were served on the carriers, there has existed, and there now exists, a dis-

pute between the BLF&E and the BLE as to whether apprentices being trained to become locomotive engineers are a part of the craft or class of locomotive firemen.

20. A strike by either the BLE or the BLF&E against any of the carrier defendants would cause grave and irreparable injury to the carrier and would disrupt essential transportation services in interstate commerce.

21. The carrier defendants and the other carriers served with the BLF&E's apprentice notices have expressed their willingness to bargain with the duly designated and authorized representative of apprentices training to become locomotive engineers regarding any valid and bargainable proposal with respect to the rates of pay, rules, or working conditions applicable to such apprentices. The carriers have objected to the BLF&E's apprentice notices, however, on the ground that those notices are invalid and nonbargainable under the Railway Labor Act because they are not within the jurisdiction of the BLF&E as the representative of the craft or class of locomotive firemen. The carriers have contended that they are not required to bargain or agree with the BLF&E with respect to the BLF&E's apprentice notices unless and until it has been definitely determined that the BLF&E is the designated and authorized representative of apprentices training to become locomotive engineers. Consequently, the carriers have refused to bargain with the BLF&E upon the merits of the BLF&E's apprentice notices. At various times, the BLF&E has applied to the NMB for its mediation services with respect to the apprentice notices served upon the carrier defendants and some of the other carriers, but no mediation upon the merits of the notices has occurred. The BLF&E has requested the NMB to terminate its services with respect to such notices, but the NMB has not done so.

22. On or about June 6, 1966, the representative of the carrier defendants and the other carriers that had been served with the BLF&E apprentice notices informed the NMB of the dispute between the BLF&E and the BLE arising out of the BLE&E's apprentice notices and requested mediatory services of the NMB in order that the carriers might "be properly and legally informed as to which of the two disputing organizations may legally bargain for and on behalf of apprentice locomotive engineers." On or about June 21, 1966, the NMB dismissed this application on the ground that the question as posed "involved a question of representation" and that "[s]uch issues are resolved under Section 2, Ninth, of the Railway Labor Act." On or about June 29, 1966, counsel for the carriers requested a hearing for the purpose of securing clarification of the grounds for dismissal. This request was denied by the NMB on June 22, 1966.

23. On or about June 25, 1966, the BLF&E filed a complaint against the defendant Louisville & Nashville Railroad Company in the United States District Court for the Western District of Kentucky (Civil Action No. 5402). In that complaint, the BLF&E sought to restrain the Louisville & Nashville from effectuating and implementing the agreement of April 28, 1966, between the Louisville & Nashville and the BLE (Finding of Fact 13, above). On or about July 5, 1966, the court dismissed that action after concluding that the "action involves a controversy between BLF&E and BLE * * * as to which of those organizations is the exclusive bargaining representative for and in behalf of the apprentice locomotive engineers employed by the L&N and this Court has no jurisdiction to determine that controversy, the determination of which is exclusively within the jurisdiction of the National Mediation Board." An appeal by the BLF&E is now pending in the United States Court of Appeals for the Sixth Circuit (No. 17,588).

24. On or about June 30, 1966, and July 5, 1966, the BLE informed the NMB of the BLF&E's challenge to its right to represent apprentice locomotive engineers employed by the Louisville & Nash-

ville and requested the NMB's services pursuant to Section 2, subd. Ninth of the Railway Labor Act. On July 22, 1966, the NMB dismissed this application on the ground that its authority under Section 2, subd. Ninth does not extend to a "jurisdictional dispute as such," and that "the dispute, if any exists, is not a representation dispute; but may involve an issue as to the right of the employees of one craft or class to do the work that is alleged to be that commonly done by employees of another craft or class. Procedures other than those outlined in Section 2, Ninth, of the Railway Labor Act are available to settle such disputes."

25. On or about July 22, 1966, the NMB, acting upon the mediation cases involving the BLF&E's apprentice notices served upon the defendants Louisville & Nashville Railroad Company and Southern Pacific Company, notified the BLF&E and the carriers' representative that, because of the denial of the carriers' request for a hearing with respect to the dismissal of the carriers' application dated June 6, 1966 (Finding of Fact 22, above), the BLF&E and the carriers "should now enter into discussion concerning the Section 6 notices served by the BLF&E. * * *" Accordingly, the NMB announced that mediation conferences with respect to the apprentice notices served by the BLF&E upon those two carriers would be held on August 4, 1966.

26. On July 27, 1966, the BLE, stating its contention that the BLF&E's apprentice notice as served on the defendant Southern Pacific Company infringed on the BLE's right to represent apprentice locomotive engineers, applied for the NMB's services under Section 2, subd. Ninth of the Railway Labor Act to determine which organization does represent apprentice locomotive engineers on the Southern Pacific for purposes of the Railway Labor Act, in order that the BLE might know whether that carrier could properly and legally bargain with the BLF&E concerning the apprentice notice. On July 28, 1966, the BLE requested the NMB to reconsider its dismissal of the BLE's Section 2 Ninth application with respect to the right to represent apprentice locomotive engineers on the Louisville & Nashville (Finding of Fact 24, above), and to advise the BLE as to the nature of the "[p]rocedures other than those outlined in Section 2 Ninth" which the NMB had stated, in dismissing that application, "are available" to settle the dispute between the BLE and the BLF&E (Finding of Fact 24, above). The NMB did not reply to either the July 27, 1966, request with respect to the situation on the Louisville & Nashville, except that the NMB notified the BLE, on or about August 1, 1966, that mediation conferences would be held as scheduled on August 4, 1966.

27. On August 4, 1966, representatives of the NMB met separately with representatives of the BLF&E and representatives of the carriers, but the merits of the BLF&E's apprentice notices were not discussed. No further mediation with respect to those notices has been scheduled.

## CONCLUSIONS OF LAW

1. This action arises under the Railway Labor Act, 45 U.S.C. § 151 et seq., and all parties are subject to that Act. The court has jurisdiction of the parties and the subject matter. 28 U.S.C. §§ 1331, 1337, 1361, 2201, 2202.

2. This action involves an actual case or controversy which is justiciable by this court. Brotherhood of Railway and Steamship Clerks, etc. v. Association for the Benefit of Non-Contract Employees, 380 U.S. 650, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965); Brotherhood of R.R. Trainmen v. Akron & B. B. R.R., 385 F.2d 581, 55 CCH Lab.Cas. ¶ 11,912, (D.C.Cir., May 12, 1967), petitions for cert. pending; Pan American World Airways, Inc. v. Int'l Bhd. of Teamsters, 275 F.Supp. 986, 56 CCH Lab.Cas. ¶ 12,270, at 20,205 (S.D.N.Y. Nov. 9, 1967).

3. Under the Railway Labor Act, the duly designated and authorized representative of a craft or class of employees of a carrier is the exclusive representative of that craft or class for pur-

poses of bargaining or agreeing with the carrier about the rates of pay, rules, and working conditions applicable to that craft or class. Only the duly designated and authorized representative of a craft or class of employees of a carrier may serve the carrier with a notice, pursuant to Section 6 of the Act, of proposed changes in agreements affecting rates of pay, rules, or working conditions applicable to such craft or class of employees. If an organization serves a carrier with a Section 6 notice concerning the rates of pay, rules, or working conditions of employees who are not within the craft or class represented by the organization, that notice is invalid, and the carrier is not required to confer, participate in mediation, or otherwise bargain with the organization concerning that notice or the proposals made therein. The apprentice notices served by the BLF&E upon the carrier defendants and many other carriers are valid and bargainable under the Railway Labor Act, therefore, only if the BLF&E is the duly designated and authorized representative on such carriers of apprentices training to become locomotive engineers. 45 U.S.C. §§ 152 subds. Second through Tenth, 156; Virginian Ry. v. System Federation, 300 U.S. 515, 548–549, 57 S.Ct. 592, 81 L.Ed. 789 (1937); Southern Pacific Co. v. Switchmen's Union, 356 F.2d 332 (9th Cir. 1965); Order of Railway Cond. & Brakemen v. Switchmen's Union, 269 F. 2d 726 (5th Cir. 1959).

■ 4. There is a *bona fide* dispute between the BLE and the BLF&E as to whether apprentices training to become locomotive engineers are within the jurisdiction of the BLF&E as the designated and authorized representative of the craft or class of locomotive firemen on the defendant carriers and many other carriers or within the jurisdiction of the BLE as the designated and authorized representative of the craft or class of locomotive engineers on such carriers. The carriers are not required under the Railway Labor Act to confer, participate in mediation, or otherwise bargain with the BLF&E over its apprentice notices

unless and until it has been determined, in the manner provided by the Railway Labor Act, that the BLF&E is the duly designated and authorized representative on such carriers of apprentices training to become locomotive engineers. Until such time as it has been so determined and the procedures of the Railway Labor Act otherwise have been exhausted with respect to such notices, the BLF&E may not strike or otherwise engage in self-help against the carriers with respect to such notices or the proposals made therein. 45 U.S.C. §§ 155–160; Southern Pacific Co. v. Switchmen's Union, 356 F.2d 332 (9th Cir. 1965); Ruby v. American Airlines, Inc., 323 F.2d 248, 255 (2d Cir. 1963); Flight Engineers' Inter. Ass'n v. Eastern Air Lines, Inc., 311 F.2d 745 (2d Cir. 1963); Pan American World Airways v. Int'l Bhd. of Teamsters, 275 F.Supp. 986. 56 CCH Lab.Cas. ¶ 12,270 at 20,206 (S.D.N.Y. Nov. 9, 1967); see NLRB v. Downtown Bakery Corp., 330 F.2d 921, 928 (6th Cir. 1965); International Ladies' Garment Workers v. NLRB, 108 U.S.App.D.C. 68, 280 F.2d 616, 621–622 (1960), aff'd, 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961); NLRB v. Hannaford Bros. Co., 261 F.2d 638, 640 (1st Cir. 1958).

■ 5. The dispute between the BLE and the BLF&E referred to in paragraph 4 above is a dispute among employees as to who are the representatives of such employees, within the meaning and intendment of Section 2, subd. Ninth of the Railway Labor Act (45 U.S.C. § 152, subd. Ninth). General Committee of Adjustment of Brotherhood of Locomotive Engineers for Missouri-Kansas-Texas R. R. v. M.-K.-T. R. Co., 320 U.S. 323, 336, 64 S.Ct. 146, 88 L.Ed. 76 (1943); Switchmen's Union of North America v. NMB, 320 U.S. 297, 302, 64 S.Ct. 95, 88 L.Ed. 61 (1943); Howard v. St. Louis S. F. Ry., 361 F.2d 905, 909 (8th Cir. 1966); Southern Pacific Co. v. Switchmen's Union, 356 F.2d 332, 335 (9th Cir. 1965); Brotherhood of Loc. F. & E. v. Louisville & N. R.R., Civil Action No. 5402 (W.D.Ky.1966), appeal pending (6th Cir.); "Railway Labor Act Amend-

**352**

ments," Hearings before House Comm. on Interstate and Foreign Commerce on H.R. 7650, 73rd Cong., 2d Sess., pp. 45, 57 (1934).

■ 6. The applications by the BLE under Section 2, subd. Ninth of the Railway Labor Act with respect to the representation of apprentices being trained to become locomotive engineers on the Louisville & Nashville Railroad Company and the Southern Pacific Company, respectively, were valid and sufficient invocations of the jurisdiction of the NMB under Section 2, subd. Ninth of the Act. Upon receipt of those applications, it was the duty of the NMB to investigate the dispute between the BLE and the BLF &E and to certify to the parties whether such apprentices come within the craft or class of locomotive engineers represented by the BLE or within the craft or class of locomotive firemen represented by the BLF&E, if either. Brotherhood of Railway and Steamship Clerks v. Association for the Benefit of Noncontract Employees, 380 U.S. 650, 85 S. Ct. 1192, 14 L.Ed.2d 133 (1965), and the authorities cited in paragraph 5 above.

■ 7. The jurisdiction of the NMB under Section 2, subd. Ninth of the Railway Labor Act to determine the dispute between the BLE and the BLF&E referred to in paragraph 4 above is exclusive, and this Court does not have jurisdiction to determine that dispute. Brotherhood of Railway and Steamship Clerks v. Association for the Benefit of Noncontract Employees, 380 U.S. 650, 658–661, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965); Switchmen's Union of North America v. NMB, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943); General Committee of Adjustment of Brotherhood of Locomotive Engineers for Missouri-Kansas-Texas R. R. v. M.-K.-T. R. Co., 320 U.S. 323, 336, 64 S.Ct. 146, 88 L.Ed. 76 (1943); General Committee of Adjustment of Brotherhood of Locomotive Engineers for Pacific Lines of Southern Pacific Co. v. Southern Pacific Co., 320 U.S. 338, 64 S.Ct. 142, 88 L.Ed. 85 (1943).

■ 8. In dismissing or failing to act upon the applications of the BLE under Section 2, subd. Ninth of the Railway Labor Act on the ground that the applications were beyond the jurisdiction of the NMB under Section 2, subd. Ninth, the NMB failed to perform its mandatory duty under that Section. This court has authority to declare the statutory duty of the NMB in this action and to compel the NMB to perform its duty under Section 2 Ninth of the Act with respect to the BLE's applications. Brotherhood of Railway and Steamship Clerks v. Association for the Benefit of Non-Contract Employees for Missouri-Kansas-Texas R.R., 380 U.S. 650, 661, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965); Air Line Dispatchers Ass'n v. NMB, 89 U.S. App.D.C. 24, 189 F.2d 685 (1951).

9. There is no genuine issue as to any material fact, and the BLE and carrier defendants are entitled to judgment as a matter of law, as hereinbefore set forth. Fed.R.Civ.P. 56.

10. The motion of the BLF&E for summary judgment should be denied, and the motions of the BLE and the carrier defendants for summary judgment should be granted as provided in the judgment being entered herewith.

### JUDGMENT

Motions for summary judgment and affidavits having been filed by each of the parties except the defendant National Mediation Board, memoranda having been filed by all the parties, counsel for all the parties having been heard, the Court having determined that the motion for summary judgment filed by the defendant Brotherhood of Locomotive Firemen and Enginemen should be denied and that the motions for summary judgment filed by the plaintiff and by the carrier defendants should be granted, the Court having made its findings of fact and conclusions of law which are being filed herewith, and due deliberation having been had, it is hereby

Ordered, adjudged and decreed:

1. That the defendant National Mediation Board has the power and duty,

which it is hereby directed to exercise under Section 2, subd. Ninth of the Railway Labor Act (45 U.S.C. § 152, subd. Ninth), to investigate the dispute between the plaintiff and the defendant Brotherhood of Locomotive Firemen and Enginemen, pursuant to the applications heretofore filed by plaintiff with the National Mediation Board, and to certify to the parties whether apprentices being trained to become locomotive engineers come within the craft or class of locomotive engineers represented by the BLE or within the craft or class of locomotive firemen represented by the BLF&E, if either.

2. That the defendants Louisville & Nashville Railroad Company, Southern Pacific Company, Great Northern Railway Company, Illinois Central Railroad Company, Atlantic Coast Line Railroad Company, and St. Louis Southwestern Railway Company, respectively, are not required to confer, participate in mediation, or otherwise bargain with respect to the apprentice notices served upon them by the Brotherhood of Locomotive Firemen and Enginemen unless and until the National Mediation Board determines, pursuant to an investigation under Section 2, subd. Ninth of the Railway Labor Act, that the Brotherhood of Locomotive Firemen and Enginemen is the duly designated and authorized representative of apprentices training to become locomotive engineers on such carrier defendant.

3. That the Brotherhood of Locomotive Firemen and Enginemen, each of its lodges, divisions, locals, officers, agents, and employees, and all persons acting in concert with them, are hereby enjoined from authorizing, calling, encouraging, permitting, or engaging in any strikes and from picketing the premises of any of the carrier defendants referred to in paragraph 2 above for the purposes of requiring any of the said carrier defendants to bargain or agree with the Brotherhood of Locomotive Firemen and Enginemen concerning the proposals made in its apprentice notices unless and until: (1) the National Mediation Board deter-

mines, pursuant to an investigation under Section 2, subd. Ninth of the Railway Labor Act, that the Brotherhood of Locomotive Firemen and Enginemen is the duly designated and authorized representative of apprentices training to become locomotive engineers on such carrier defendant, and (2) the Brotherhood of Locomotive Firemen and Enginemen otherwise exhausts the procedures of the Railway Labor Act with respect to its apprentice notices.

4. Plaintiff and the carrier defendants shall recover from the defendant Brotherhood of Locomotive Firemen and Enginemen their taxable costs.