**GREAT NORTHERN RAILWAY COMPANY, Plaintiff-Appellant,**

v.

**NATIONAL RAILROAD ADJUSTMENT BOARD, FIRST DIVISION, et al., Defendants-Appellees.**

No. 17526.

United States Court of Appeals, Seventh Circuit.

Feb. 16, 1970.

Martin M. Lucente, William P. Richmond, Ronald J. Sklar, Chicago, Ill., for plaintiff-appellant; Sidley & Austin, Chicago, Ill., of counsel.

Burke Williamson, John F. Morrissey, Jack A. Williamson, Chicago, Ill., for defendants-appellees Labor Members; Adams, Williamson & Turney, Chicago, Ill., of counsel.

Before CASTLE, Chief Judge, HASTINGS, Senior Circuit Judge, and FAIRCHILD, Circuit Judge.

HASTINGS, Senior Circuit Judge.

Plaintiff Great Northern Railway Company filed the instant action in the district court for the Northern District of Illinois. Named as defendants were the National Railroad Adjustment Board, First Division, and the individual members and referee.[1] Plaintiff sought a decree ordering the members of the First Division of the National Railroad Adjustment Board to proceed to interpret the Division's Awards 20841 through 20847 sustaining claims on behalf of certain employees of Great Northern. The order was sought on the ground that the Division had failed to perform its statutory duty to make such an interpretation upon request and had thus denied Great Northern its rights under Section 3 First (m) of the Railway Labor Act. 45 U.S.C.A. § 153 First (m).

The district court denied Great Northern's motion for summary judgment and, on its own motion, dismissed the complaint for lack of jurisdiction and for reasons of comity with the Minnesota district court. The Great Northern appeals. Only the labor members of the Division contest this appeal. The carrier members have not appeared or filed briefs. We reverse.

At various times prior to March 7, 1966, certain employees of Great Northern, represented by the Order of Railway Conductors and Brakemen (Union), filed claims for additional compensation based on train delays. When these claims could not be disposed of through collective bargaining grievance procedures, the Union filed claims with the First Division of the National Railroad Adjustment Board pursuant to provisions of the National Railway Act. 45 U.S.C.A. § 153 First (i).

The First Division consists of five labor appointed members and five carrier appointed members. Anticipating frequent deadlocks, the Act provides for the appointment of a neutral referee when an impasse is reached. 45 U.S.C.A. § 153 First (l). Such an impasse developed in the instant case and a referee was appointed. On March 7, 1966, the Division, with the carrier members dissenting, issued seven awards sustaining the claims of employees identified in the submissions before it. In addition, pursuant to a 1955 collective bargaining agreement between Great Northern and the Union, the Division made the awards applicable to "all subsequent analogous claims" and added that "whether there are any such analogous claims may readily be ascertained from Carrier's records."

Great Northern paid the claims of the identified employees. However, a dispute arose between the parties as to the

[1]. The individuals were H. V. Bordwell, J. E. Carlisle, W. F. Euker, E. T. Horsley, T. F. Strunck, Don A. Miller, R. E. Delaney, G. T. DuBose, Q. C. Gabriel, K. Levin, Members of the First Division; and David Dolnick, Referee.

meaning of the phrase "all subsequent analogous claims." The Union submitted a partial list of claims it felt were covered by that phrase. Great Northern took the position that the list included claims that had expired under the terms of the labor agreements before the awards were rendered; instances in which claims had not been processed through the steps described in the labor agreement; and claims which had been disposed of by a negotiated agreement of withdrawal before the awards were rendered. These claims, Great Northern contended, were not within the scope of the awards. Discussion continued for nearly two years.

The Railway Labor Act provides that a suit to enforce an order applicable to an award must be filed within two years from the time the cause of action accrues. 45 U.S.C.A. § 153 First (r). On April 2, 1968, five days before the limitation period expired, the Union, on behalf of itself and the persons for whose benefit the seven awards were made, brought suit in the United States District Court for Minnesota, pursuant to Section 3 First (p) of the Act, seeking enforcement of the awards against Great Northern. Since Great Northern had already paid the identified claimants, this action pertained only to "subsequent analogous claims."

After the Minnesota enforcement suit was filed, Great Northern, on May 10, 1968, filed a request with the First Division for interpretation of the seven awards pursuant to Section 3 First (m) of the Railway Labor Act. 45 U.S.C.A. § 153 First (m).

Great Northern then moved for summary judgment in the Minnesota court on the ground that interpretation of the awards and the contract on which they were based was a matter exclusively for the Division. It cited its request for interpretation in support of this motion.

On September 12, 1968, the Minnesota court denied the motion for summary judgment, saying, in part:

"[T]he Order of Railway Conductors and Brakemen has sought enforcement of these awards under Section Three, First (p) of the Railway Labor Act, 45 U.S.C. § 153 First (p) (Supp.1967). Subsequent submission of a request for clarification to the Board cannot, in itself, divest this Court of the jurisdiction specifically granted by statute.

"Furthermore, this Court is not satisfied that there is no 'genuine issue as to any material fact.' See F.R.C.P. 56(c). Specifically, the Court thinks that it may be possible to find claims which are covered by the awards given and which, as is stated in Award 20841, may be 'readily ascertained from the Carrier's records.' Of course, the Court does not now rule that there are such permissible and enforceable claims, but merely decides that the respondent has not at present established an adequate basis for a motion for summary judgment."

The court then set a time for a pre-trial conference at which it would consider Great Northern's objections to certain interrogatories. So far as we are advised, the Minnesota litigation has proceeded no further.

On October 21, 1968, the carrier members of the First Division proposed two resolutions under which the Division was to proceed to interpret the awards as requested by Great Northern.[2] The five labor members voted against these resolutions so that neither secured the majority vote required by the Act. 45 U.S.C.A. § 153 First (n). No further action has been taken by the First Division.[3]

---

2. The Union had failed to respond to a request by the Division that it state its position in the dispute.

3. The Act makes provision in Section 3 First (*l*), 45 U.S.C.A. § 153 First (*l*),

for the appointment of a neutral referee to resolve deadlocks over the granting of awards but makes no similar provision when the deadlock arises in the course of a request for interpretation under Section 3 First (m).

On November 6, 1968, Great Northern filed the instant action in the United States District Court for the Northern District of Illinois seeking to compel the First Division to interpret its awards as required by Section 3 First (m) of the Act. The Illinois court dismissed the complaint, *sua sponte*, saying in part:

"[T]he court * * * is of the opinion that this court is without jurisdiction to hear this cause for the reason that plaintiff's exclusive remedy herein with respect to the award of the National Railroad Adjustment Board is found under the provisions of Section 3, First (p) and (q) of the Railway Labor Act (45 U.S.C. § 153, First (p) and (q).

"Further, a suit concerning this same subject matter and parties was already on file in the United States District Court for Minnesota. That court had acquired jurisdiction of the parties and the subject matter and it is still there pending. Any action by this court would not be in keeping with the rule of the comity between courts." [4]

In brief, the issues for our review are 1) whether the Illinois court had jurisdiction to compel the First Division to interpret its awards; 2) whether, if it did, such jurisdiction was defeated by the prior filing in the Minnesota court of the enforcement action; and 3) whether, if there was jurisdiction and it was not defeated, the court should have declined to exercise it for reasons of comity.

In relevant part, Section 3 First (m) states:

" * * * In case a dispute arises involving an interpretation of the award, the division of the Board upon request of either party shall interpret the award in the light of the dispute."

We find nothing ambiguous in these words. They clearly provide that the

Division *shall* interpret its awards *upon request.*

It is undisputed here that Great Northern, as a party to an award of the Board, has requested an interpretation. We may conclude from this that Great Northern has a right to an interpretation by the Division which the Division has no discretion or authority under the statute to deny.

This right has, nevertheless, been nullified by the refusal of the five labor members to proceed with the interpretation. In such a case it is well established that a court may intervene to prevent the nullification, by administrative action, of rights granted by Congress. In Switchmen's Union v. National Mediation Board, 320 U.S. 297, 300, 64 S. Ct. 95, 97, 88 L.Ed. 61 (1943), the Court said: "If the absence of jurisdiction of the federal courts meant a sacrifice or obliteration of a right which Congress had created, the inference would be strong that Congress intended the statutory provisions governing the general jurisdiction of those courts to control." Citing Texas & New Orleans R. Co. v. Brotherhood of Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034 (1930), and Virginian Ry. Co. v. System Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937). Although the Court found this rationale inapplicable to the case before it, several courts have applied it to sustain the jurisdiction of district courts to order the Adjustment Board to perform its statutory duties.

For example, in Brotherhood of R. R. Trainmen v. Swan, 7 Cir., 214 F.2d 56 (1954), when the First Division became deadlocked over the form of an order to reopen certain awards, the union brought an action to compel it to reopen and decide the cases. We held the Division had a clear statutory duty to reopen the cases and upheld the jurisdiction of the district court, under general jurisdiction statutes, 28 U.S.C.A. §§ 1331 and

---

4. It appears, as set out more fully hereinafter, that the Illinois court was in error concerning the parties and subject matter before the Minnesota court.

1337, to compel it to act. In Delaware & Hudson R. Corp. v. Williams, 7 Cir., 129 F.2d 11, 16 (1942), we said: "Courts may not determine *how* the administrative tribunal shall act. They may, however, compel such body *to act.*" [5]

■■ Thus we may conclude that, so far as the words of Section 3 First (m) are concerned, Great Northern has an absolute and unequivocal right to an interpretation of the awards in question by the First Division. We may further conclude that the Illinois court had jurisdiction to compel the Division to perform its statutory duty under this section, unless such jurisdiction is defeated in the instant case by other provisions of the statute. The defendant labor members concede as much in their brief but argue that jurisdiction in the Illinois court is defeated by the prior filing of the Section 3 First (p) enforcement action in the Minnesota court. Our analysis of the relevant statutory provisions, their legislative history, and their underlying policies leads us to the opposite conclusion.

Section 3 First (p) deals with the right of a beneficiary of an award of the Board to petition an appropriate district court to enforce it against a carrier which has refused to comply voluntarily. The statute provides that the district court may refuse to enforce the award and set it aside only in very limited circumstances: "[S]uch order may not be set aside except for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a

member of the division making the order."

Section 3 First (p) does not expressly give the enforcing court any power to remand an award to the Board. However, it has been held that a court acting under this section may avail itself of the remand power given in Section 3 First (q). Transportation Communications Employees Union v. Union Pacific R. R., 385 U.S. 157, 165, 87 S.Ct. 369, 17 L. Ed.2d 264 (1966); Laday v. Chicago, M., St. P. & Pac. R. R. Co., 7 Cir., 422 F.2d 1168; Brotherhood of Railroad Signalmen v. Southern Ry. Co., 4 Cir., 380 F.2d 59 (1967), cert. den. 389 U.S. 958, 88 S.Ct. 324, 19 L.Ed.2d 368 (1967); Hanson v. Chesapeake and Ohio Railroad Co., 291 F.Supp. 401 (S.D.W.Va.1967), vacated on other grounds, 4 Cir., 412 F. 2d 631 (1969); Brotherhood of Railroad Signalmen v. Chicago, M., St. P. & Pac. R. R. Co., 284 F.Supp. 401 (N.D.Ill. 1968). See also System Federation v. Braidwood, 284 F.Supp. 607 (N.D.Ill. 1969). Section 3 First (q) deals with the right of any party to an award to petition an appropriate district court for review of the award on the ground that the party seeking review is somehow "aggrieved" by it. The remand power of the district court under this section is confined by the same three conditions found in Section 3 First (p): 1) failure to comply with the Act; 2) lack of jurisdiction of the Board; or 3) fraud.

Defendant labor members contend that because the enforcing court has this power to remand an award to the Division, the filing of an enforcement action deprives any other court of jurisdiction to compel the Division to interpret the

5. *See also* Air Line Dispatchers Assn. v. National Mediation Board, 89 U.S. App.D.C. 24, 189 F.2d 685 (1951); Brotherhood of Locomotive Engineers v. National Mediation Board, 284 F.Supp. 344 (D.C.1968); Taylor v. Swan, 132 F.Supp. 356 (N.D.Ill.1955), revd. on other grounds sub nom., Taylor v. Fee, 7 Cir., 233 F.2d 251 (1956), aff'd *sub nom.,* California v. Taylor, 353 U.S. 553, 77 S.Ct. 1037, 1 L.Ed.2d 1034 (1957); Missouri-Kansas-Texas Railroad Co. v.

National Railroad Adjustment Bd., 128 F.Supp. 331 (N.D.Ill.1954); Townsend v. National Railroad Adjustment Bd., 117 F.Supp. 654 (N.D.Ill.1954); Patterson v. Chicago & Eastern Illinois R. Co., 50 F.Supp. 334 (N.D.Ill.1943). Cf. Brotherhood of Railway & Steamship Clerks v. Association for Benefit of Non-Contract Employees, 380 U.S. 650, 661–668, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965).

award pursuant to its duty under Section 3 First (m). However, none of the above cited cases, which are the only ones relied upon by defendants, involved the question of whether the pendency of a Section 3 First (p) or (q) proceeding limits in any way the rights granted by Section 3 First (m). That question must be answered in light of the language and purposes of these various provisions.

Section 3 First (m) represents the Congressional solution to the specific problem of how to resolve disputes concerning the meaning and coverage of Adjustment Board awards. Congress apparently concluded that such disputes could be resolved best by providing each party with an absolute right to an interpretation by the division that made the award.

Section 3 First (p) is directed to the distinctly different problem of judicial enforcement of awards. Nothing in its language indicates that it is intended to affect rights under Section 3 First (m). In fact, just the opposite appears. By narrowly limiting the power of an enforcing court to tamper with an award, Congress indicated its intention that the Board itself should deal with problems of interpreting its awards. Section 3 First (m) is the device Congress provided.

Further, the right to a remand under Section 3 first (p) does not, as defendants contend, provide a party the same remedy as that afforded by Section 3 First (m). Under the former section, a party may secure an interpretation of an award only if one of the narrow exceptions under which the enforcing court has discretion to remand is present and then only if the court exercises such discretion. This is no substitute for a right which Congress saw fit to make absolute in Section 3 First (m). Since Section 3 First (m) is the section specifically designed to deal with problems of interpretation of awards, it should take precedence over Section 3 First (p) when the problem is one of interpretation rather than enforcement.

In addition, even in a case where the enforcing court had the discretion to remand an award and chose to exercise it, it is by no means clear that such a procedure would be an adequate substitute for the Section 3 First (m) right and the corollary right to compel the division to act by means of a suit such as the instant one. For example, in the present case the enforcing court in Minnesota does not have personal jurisdiction over the members of the Division, all of whom reside in the Northern District of Illinois. While the enforcing court does not need personal jurisdiction to remand an award under Section 3 First (p), it would need such jurisdiction to enter an order compelling the members of the Division to proceed to interpret the award on remand. The Division has thus far refused to interpret the award despite the clear statutory mandate. If on remand it persisted in that attitude, there would be no way to compel it to act other than by a suit such as the one now before us from the Northern District of Illinois. Nothing in the Railway Labor Act indicates even faintly that parties to an award, who seek an interpretation, should be needlessly delayed to learn whether the enforcing court will remand an award and further delayed to determine whether the division will proceed to act without the spur of a coercive court order.

Sections 3 First (m), (p) and (q) are all, in their present form, the result of amendments to the Railway Labor Act made in 1966. The content and legislative history of those amendments confirm our conclusion, drawn from the statutory language, that the pendency of a Section 3 First (p) proceeding was not intended to affect rights granted under Section 3 First (m).

The 1966 amendments eliminated from Section 3 First (m) a provision allowing courts to review *de novo* money awards of the Adjustment Board and made all awards "final and binding upon both parties to the dispute." Provisions of Section 3 First (p) were changed to provide that orders of the Board should be

"conclusive on the parties" rather than merely "prima facie evidence of the facts therein stated." The sentence limiting the power of the enforcing court to set aside awards was added. Finally, the amendments added the present Section 3 First (q).

It is clear from the amendments themselves that a major purpose of Congress was to reduce the power of courts to set aside awards of the Board and thus to discourage resort to the courts and to encourage ready voluntary compliance with Board awards.

At several points in the legislative history, reference is made to the fact that "the bill would eliminate review by trial de novo in grievance cases referable to the National Railroad Adjustment Board and make findings of the Board final and binding except for judicial review on grounds generally applicable to arbitration awards * * *." See Sen.Rep. 1201, 89th Cong., 2nd Sess., June 2, 1966, U.S.Code Cong. & Admin. News 1966, p. 2288; 112 Cong.Rec. 2749–54. During debate on the amendments Congressman Younger of California, a principal supporter of the amendments, explained their purpose, saying *inter alia*: "If as a matter of fact this system is intended to enforce compulsory arbitration, then the award should be the end of the controversy. If the employee is given an award by the Board, it should be carried out. This bill provides for just that. It would do away with judicial review except to question the jurisdiction of the Board or to show fraud in a proceeding." 112 Cong.Rec. 2749.

It becomes clear that the double purpose of the amendments is to avoid delay in finally settling minor disputes and to encourage the settlement of such disputes with minimum interference from the courts. These purposes could be frustrated if we were to hold, as defendants would have us do, that the absolute right to an interpretation by the Adjustment Board under Section 3 First (m) is made less absolute by the filing of a Section 3 First (p) enforcement suit.

We conclude that nothing in the Railway Labor Act defeats the jurisdiction of the Illinois district court to compel the First Division of the Adjustment Board to perform its statutory duty under Section 3 First (m).

The final contention of the defendant labor members is that, quite apart from anything in the Railway Labor Act, "the rule of comity should be applied * * *" and the Illinois district court should defer to the Minnesota district court. This position finds no support in either the technicalities or the policy of the rule of comity.

Briefly, the comity doctrine is one based on notions of sound judicial administration and requires that when two identical actions are filed in courts of concurrent jurisdiction, the one which first acquired jurisdiction should be the one to try the lawsuit. The purposes of the rule are to avoid unnecessarily burdening courts and to avoid possible embarrassment from conflicting results.

Technically, the concept of comity has no application in cases like the instant one in which the two pending suits involve different parties, different causes of action, and different issues. The parties in the Minnesota action are the Order of Railway Conductors and Brakemen, three individual employees, the class of all other Great Northern employees who claim benefits under the awards in question, and the Great Northern Railway. The parties in the instant action are the Great Northern Railway, the individual members of the First Division, and the neutral referee. The Minnesota action seeks to enforce certain awards of the Division by obtaining a money judgment in favor of various employees. The instant action seeks a court order requiring the individual members of the Division and the referee to interpret the phrase "subsequent analogous claims" as used in the awards. The issues in the enforcement action are whether the awards were made in compliance with the Act, whether they were within the Board's jurisdiction, and whether the Board was

guilty of fraud or corruption. The issue in the instant action is whether the Board has a statutory duty under Section 3 First (m) to interpret the phrase "subsequent analogous claims" pursuant to the request of Great Northern.

In terms of the policies of judicial administration underlying the comity doctrine, it should be noted that the disposition of this action by the Illinois court will in no way interfere with the Minnesota court in its disposition of the enforcement proceeding. In fact, by ordering the First Division to perform its statutory duty, the Illinois court may be facilitating the work of the Minnesota court.

This is clearly evident from the order of the Minnesota court itself. That court did not rule that the parties were not entitled to proceed with their Section 3 First (m) rights. In fact, the court there recognized that the awards were not clear and that Section 3 First (m) was available. The court held only that the mere filing of a Section 3 First (m) request could not deprive it of its previously attached Section 3 First (p) jurisdiction, and we agree. In so holding, it plainly recognized that the two procedures should proceed independently of, and simultaneously with, each other. The enforcing court may be aided by the Division's interpretation of the awards and it said nothing to indicate that it did not fully expect Great Northern to secure such interpretation.

If matters had proceeded in their normal course, this is exactly what would have happened. The Section 3 First (m) proceeding would have resulted in an interpretation of the awards which the parties then could have made available to the Minnesota court for its consideration in connection with the Section 3 First (p) enforcement action. This, we believe, is precisely what the statute contemplates and what the Minnesota court contemplated in refusing to dismiss the enforcement action despite the filing of the Section 3 First (m) request for interpretation.

However, this carefully devised plan has been thwarted by the refusal of the First Division to interpret the awards. By compelling it to proceed with its statutory duty, we do no more than to restart the process that the statute and the Minnesota court expected to operate as a matter of course. We find in this nothing offensive to sound judicial administration. We stress further that in so ruling we have no purpose to embarrass, interfere or otherwise impede the Minnesota court in resolving the questions presented to it.

In sum, we find and hold that the Illinois district court had jurisdiction of the instant action to compel the First Division of the National Railroad Adjustment Board to interpret its awards pursuant to its duty under Section 3 First (m) of the Railway Labor Act. We further find and hold that such jurisdiction is not defeated by the prior filing in another district court of an enforcement action under Section 3 First (p). Finally, we conclude the Illinois court was not bound by the rule of comity to decline to exercise such jurisdiction. Accordingly, the judgment of the district court denying plaintiff's motion for summary judgment and dismissing the complaint is reversed. This cause is ordered remanded to the district court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

FAIRCHILD, Circuit Judge (dissenting).

I assume that the question whether an award requires interpretation before it can be enforced is often a threshold question in an enforcement proceeding brought under paragraph (p). In the enforcement proceeding in Minnesota in this instance, there is doubtless a critical question whether the term "all subsequent analogous claims" requires interpretation before enforcement is appropriate.

In deciding that the carrier has a right to an interpretation by the board,

enforcible by mandamus, we are necessarily deciding that the award requires interpretation before enforcement. I think this decision is the responsibility of the court in Minnesota, and that the district court in Illinois properly declined to enter the field. Should the court in Minnesota decide that interpretation is required, and the board fail to comply, it would then be appropriate for the district court in Illinois to use its power to compel action. Should the court in Minnesota enforce the award without obtaining an interpretation from the board, its decision would be subject to review on appeal.

I concede, of course, that the language of paragraph (m), read separately, supports the view of the majority, but it seems to me that when the statute is read as a whole, there must be an accommodation between the right of a party to obtain an interpretation and responsibility of a court in an enforcement proceeding.